## PADEN v. VAN BLARCOM, Appellant.

### Division Two, March 23, 1904.

1. **NEGLIGENCE: Danger Foreseen.** Where negligence is alleged as a cause of injury the test of defendant's liability is that the consequences of the act complained of were such as under the circumstances might and ought to have been foreseen by defendant.

2. ———: ———: **On One's Premises: Care.** One doing a lawful act upon his own premises is liable for injuries inflicted upon a servant if he uses a dangerous instrument or tool in such a manner as he has reason to know is liable to produce the injury. And the degree of care he is required to use increases with the degree of danger.

3. ———: ———: ———: ———: **Question for Jury: Stove: Gas Explosion.** Plaintiff, a sewing girl employed for some years in defendant's residence, was injured by the explosion of gas in a new range which had been set up in defendant's kitchen. The range had been properly constructed, had been properly set up and left with all its valves closed, and had it remained in this condition it would have been entirely safe to have turned on the gas without testing the valves, but the cocks which supplied the gas were open, and when that was the case and the gas was permitted to accumulate in the oven and boiler and the burners on top were lighted, an explosion was the known result. Defendant was testing the range, and without ascertaining whether or not the cocks were closed, lighted the burners, the explosion followed, and the plaintiff, who had entered the room to bear to defendant a message from his wife, was injured. Defendant did not know that the cocks were open, nor was the unsafe condition brought about by defendant or by any one for whose conduct he was responsible, but by accident or an intermeddler. The range had been in the house several days, but had not been used, and defendant's purpose in lighting the gas was to test it. He was familiar with the construction and operation of gas ranges, and was aware that if the burners were lighted while gas was escaping into the boiler an explosion would follow. *Held*, that the court could not say as a matter of law that he was not guilty of negligence, and that it was for the jury under the circumstances to determine the question.

4. ———: **Gas Explosion: Discovering Danger.** Although the owner of a house may take some precautions to guard against a gas explosion, yet if the evidence shows that an effectual means to prevent it was at hand and he did not avail himself of that means, it is then a question for the jury to say whether or not he was guilty of negligence.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Boyle, Priest & Lehmann* for appellant.

(1)   The court erred in refusing the instruction directing a verdict for the defendant.   Louisville Gas Co. v. Gutenkuntz, 82 Ky. 432; Brewing Ass'n v. Talbot, 141 Mo. 682.   (2)   The court erred in its first instruction given for plaintiff in charging that the defendant in the use of the stove was bound to the exercise of such care as is required of persons who undertake the use and management of explosives. (3) The court erred in its first instruction given for plaintiff in authorizing the jury to find that the failure of defendant to examine the valves of the stove before lighting the burners was in and of itself negligence.   Davies v. Railroad, 159 Mo. 1.   (4)   The court erred in giving to the jury conflicting instructions, calculated to confuse and mislead the jury, in this, that the first instruction given for the plaintiff authorizes the jury to find that defendant's failure to examine the valves was, *per se,* negligent, while the fifth instruction given for the defendant absolved him from negligence unless  there was something in the situation and surroundings calculated to make a prudent man look for something wrong in the condition of the stove.   Henschen v. O'Bannon, 56 Mo. 289; Stone v. Hunt, 94 Mo. 475; State v. Harrell, 97 Mo. 105; Evers v. Shumaker, 57 Mo. App. 454.   (5)   The court erred in refusing the eighth instruction asked by defendant, to the effect that defendant was not negligent in lighting the stove without first seeing that its

various valves were closed, unless there was something in the situation which would have dictated such a measure to a man of ordinary care and prudence.

*Virgil Rule* for respondent; *Charles P. Johnson* and *O. J. Mudd* of counsel.

(1) The facts in this case present a clear case of negligence. But if the facts proven put the question of defendant's negligence "on the border land of doubt that lies between negligence and care," it is for the jury. Huhn v. Railroad, 92 Mo. 440; Lynch v. Railroad, 112 Mo. 420; Mauerman v. Sieumertz, 71 Mo. 101; Omellia v. Railroad, 115 Mo. 205; Gratiot v. Railroad, 116 Mo. 450; Dowell v. Guthrie, 116 Mo. 646; Doyle v. Railroad, 140 Mo. 1. It is only when the facts are undisputed and all reasonable men must necessarily reach the same conclusion as to the quality of defendant's act, that the question of negligence is for the court. (2) Precaution is always a duty where there is reason for apprehension. Coal gas is poisonous and highly explosive. He who undertakes to release it from a place of safety into empty pipes, knows from its nature that it will escape through the slightest opening. He should be apprehensive of this, and look to see that the openings or valves made to control the thing so dangerous are closed. Paden v. Van Blarcom, 100 Mo. App. 185; Finnegan v. Fall River, 159 Mass. 311; Schmeer v. Gas Co., 147 N. Y. 529, 30 L. R. A. 657; Chisholm v. Atlanta Co., 57 Ga. 28; Flint v. Gas Co., 3 Allen 343; 9 Id. 552; Barrickman v. Marion (W. Va.), 32 S. E. 327; Beeyr v. Gas Co., 60 N. Y. Supp. 630; Koelsch v. Phila. Co., 152 Pa. St. 355; Kiebele v. Phila., 105 Pa. St. 41; Kimmell v. Burfeind, 2 Daily 155; Holly v. Boston, 8 Gray 123; Smith v. Boston, 129 Mass. 318; Tiehr v. Gas Co., 65 N. Y. Supp. 10; Oil City Co. v. Robinson, 99 Pa. St. 1; Alexandria v. Irish, 44 N. E. 680; Bastian v. Keystone Co., 50 N. Y.

Supp. 537; 12 Am. and Eng. Ency. Law, 514. (3) Defendant brought upon his premises a fluid not only dangerous cause poisonous, but because highly explosive, would become dangerous if not kept under control. All courts agree that what is termed "reasonable care" in the management and use of such a fluid is a degree of care, watchfulness, diligence, skill and attention, proportionate to the danger to be avoided. 1 Thomp. Neg. (2 Ed.), 797, 733, 694, 635; Fletcher v. Rylands, 3 H. L. 380; 1 Thomp. Neg. (1 Ed.), 2; Holden v. Gas Co., 3 C. B. 1; Frauenthal v. Gas Co., 67 Mo. App. 9; Van Winkle v. American, 52 N. J. L. 240; McAndrews v. Collerd, 42 N. J. L. 189; Morgan v. Cox, 22 Mo. 373; Garrison v. Graybill, 52 Mo. App. 584; Dowell v. Guthrie, 99 Mo. 653, 116 Mo. 646; Robards v. Murphy, 75 Mo. App. 39; Cobb v. St. Louis, etc., 149 Mo. 609. (4) (a) Plaintiff was defendant's servant. His duty to her as master required him to furnish her a safe place and appliances and to exercise care in his deportment toward her. He could not delegate this duty to a third party. Herdler v. Buck, 136 Mo. App. 16; Reichla v. Gruensfelder, 52 Mo. App. 44; Burns v. Railroad, 129 Mo. 56. (b) The master can not excuse the violation of a duty to his servant by presuming that others had done their duty. (c) "No one has a right to rely upon the obligation of others to do their duty, and himself neglect the dictates of prudence." Clark v. Railroad, 127 Mo. 213. (5) There is no distinction between the degree of care required of different classes of individuals. The manufacturer and vendor are not on a plane in regard to the care required of them in using, handling, managing or controlling a thing that is dangerous or might become dangerous; different from the vendee, the master, the consumer or the user. Even infants are held for their negligence in handling things that are highly explosive. 1 Thomp. Neg. (2 Ed.), 784; Bradley v. Andrews, 51 Vt. 530. (6) If defendant's negligence was an efficient cause of the injury it would not matter

that the range company or how many others might have been in fault.  Benjamin v. Railroad, 133 Mo. 274. Had the explosion taken place unattended by any explanatory circumstances, the explosion is prima facie evidence of the defendant's negligence, and for the jury.  Van Winkle v. American Co., 52 N. J. L. 240; Morgan v. Cox, 22 Mo. 373; Fay v. Davison, 13 Minn. 537; Morris v. Burgess, 44 Ill. App. 27; Illinois Co. v. Phillips, 49 Ill. 234, 55 Ill. 194; The Reliance, 4 Woods (U. S.) 420; Young v. Bransford, 12 Lea 232; Ochsenbein v. Shapley, 85 N. Y. 214.

BURGESS, J.—This case was certified to this court from the St. Louis Court of Appeals upon a division of opinion in that court.

The opinion is as follows:

"BLAND, P. J.—The material allegations in the petition are that for more than ten years prior to the twenty-sixth day of February, 1896, plaintiff was in the employ of the defendant as a domestic; that prior to said date defendant had caused to be set up in his home in Westmoreland Place in the city of St. Louis, a combination cooking range, heated by gas or coal, designated or known as a 'Majestic Range;' that the range when used and operated in a proper manner is not dangerous, but when used in an improper manner is unsafe and exceedingly dangerous, which facts were then known to the defendant; that while plaintiff was in the kitchen in defendant's building, where said range had been set up, in the discharge of her duties under said employment and while in close proximity to said range, defendant negligently used and operated said range so as to cause great injury to plaintiff, in this, he negligently allowed that part of the range known as the broiler to fill with gas and negligently lighted the burners on top of the oven in close proximity to the broiler and caused the broiler to explode, causing pieces of the

range to strike plaintiff with great force and violence, breaking her arm, bruising her about the head and body and in the eye, causing a total loss of sight in one eye and permanently injuring and disfiguring her; by reason whereof she claims she was damaged in the sum of fifteen thousand dollars.

"The answer admits that plaintiff was in defendant's employ as a domestic at the time of the accident mentioned; admits that he had set up in the kitchen of his new home a combination cooking stove heated by gas and known as a 'Majestic Range;' admits that at the time of the accident he was engaged in using and operating the range; denies that he was doing so in a negligent manner; admits that the explosion occurred, but denies that it was occasioned by any fault or negligence on the part of defendant; admits that plaintiff was injured, but denies that she was injured by any fault or negligence on the part of the defendant, and denies the injury to the extent alleged in the petition, and denies each and every other allegation contained in the petition.

"For a further defense defendant alleged that the 'Majestic Range' was purchased by him of the Majestic Range Manufacturing Company who are manufacturers of the range and reputed to be reliable and competent manufacturers of the same; that the range was set up by the company and turned over to the defendant as in a proper condition for safe use, and that defendant so believing at the time that said range was in such condition for safe use, ignited the same, when without any fault on his part the explosion occurred.

"The reply was a general denial to the new matter alleged in the answer.

"The evidence is that about ten days or two weeks prior to the accident the Majestic Range Company had placed in defendant's new building, then near completion, a combination cooking range heated by coal or gas, and that connection had been made with the gas

pipe in the building.   The gas was let into the range through a cut-off in the pipe at the side of the range. When this cut-off was open the gas would flow into the pipes supplying the valves, to the broiler and the burners on the top.   The broiler was heated by opening valves in the supply pipe for the broiler and lighting the gas, and the burners were lighted in a similar manner by opening valves to the pipes supplying them with gas.   The evidence is that on the twenty-sixth day of February, 1896, the defendant, his wife, the plaintiff, and John Watts (colored) the butler, were in the building; that the plaintiff went on an errand from Mrs. Van Blarcom to Mr. Van Blarcom and in her search for him found him and Watts in the kitchen about the gas stove.

"She stated that she went in the kitchen to tell the defendant that his wife wanted him to come upstairs and open the safe; that he said he would be up in a minute, and then said, 'Lizzie, I wish you would look at this stove and see if it burns as the one in the old house,' and started to light another burner.   She said, 'No, I don't think it does; it don't catch as quickly as the one at the old house,' and she was about to leave the room when the explosion took place.   Then when the explosion did take place she was struck above and below the right eye, where she has two scars, her right arm was broken and is yet badly injured, and her right eye was entirely destroyed; that she had been in the service of defendant for about ten years prior to the accident, and that her duties had been to 'do sewing and take care of the boy;' that since the accident she has not been able to earn any more than enough to clothe herself and to make a living; that prior to the accident she had been receiving from defendant sixteen dollars a month and her board; that since the accident she has not been able to sew one day after another; that her left eye was

weak and she was unable to do hard work on account of the injury to her right arm.

"John Watts, the butler, testified that he and the defendant were looking around the stove; that defendant was in front and he on the side, and that he could hear something blowing, and the defendant asked him what it was, and he told him that he didn't know. Defendant was looking and examining the stove, and he (witness) stooped down to examine the stove and to look into the oven, and just at that time the door blew off and blew over his head; that the explosion occurred almost instantly after he heard the noise; that before the plaintiff had come into the kitchen he, on the order of the defendant, had opened the cut-off and let the gas into the stove, and that the defendant had lighted the burners on top; that before the gas was turned into the stove the valves in the stove were not examined by him, nor by the defendant, to his knowledge; that the plaintiff came into the kitchen about the time the burners on top were lighted.

"The defendant, whose deposition had been taken prior to the trial, testified substantially as follows: That on the day of the accident, on the request of his wife, he went out to the house to show her the combination of one of the safes or vaults in the house. When he reached the house his wife was busy with some other matters, and that he went through the different rooms examining them and finally reached the kitchen where he found the butler, John Watts; that he noticed the range, which he had been informed was completed, and asked Watts if it was all right. Watts said he didn't know, that he had not tried it; that he then suggested to Watts that they had better examine it and see; that he told him to turn on the gas and that he (witness) turned on the cocks which controlled the flow of the gas at the top of the stove; that when Watts turned on the gas below, he turned on the cocks which controlled the flow of gas to the top of the stove and lighted the burn--

ers; that they were not entirely satisfactory, did not appear to burn in a satisfactory manner, and as he was looking around the stove to see if he could locate the difficulty, plaintiff appeared at the door, and said, 'Mr. Van Blarcom, Mrs. Van Blarcom is ready for you now.' To which he replied, 'Very well, Lizzie, I will be there in a few minutes.' That he went on to investigate the stove to see if he could ascertain why the burners were not working better, and that the plaintiff stood almost directly behind him watching the proceedings; that she remarked the burners did not seem to burn as well as they did in the old kitchen at home; that he was still engaged in examining the stove and had stooped down to look at the cock at the side of the lower part of the range, and thinks at that time that Watts was at the other side for the same purpose; that they were trying, if possible, to see what was the matter. While they were in this position, he on one side and Watts on the other and plaintiff almost immediately in front of the stove, the explosion occurred, and the door of the broiler was blown off and a piece of it struck the plaintiff and knocked her down; that he immediately picked her up and took care of her and summoned a doctor.

"Defendant testified that he was familiar theoretically with the working of ranges of the character of the one in the house; that he had examined a great many stoves of different kinds and had more or less experience with them for many years, had often instructed his cooks how to use them. He explained the cause of the explosion in this wise: That the cocks which supplied the gas, or which controlled the supply of gas flowing to the burners in the broiler, were left open, and the gas accumulated in there sufficiently to cause the explosion when it reached the flame below where the gas was burning on top of the stove; that he did not open these cocks on that occasion and stated they were evidently left open by the workmen who put up the range;

that he did not touch them himself and that when he came back to the stove after the explosion and after the plaintiff had been taken care of he found those cocks were open, and stated positively that they were not opened by him nor by Watts; that he was standing by Watts at the side of the stove, after he turned off the gas at his direction, and when the burners on top did not appear to work well Watts was examining one side of the stove while he was on the other trying to locate the difficulty, and that neither of them had touched the cocks which controlled the supply of gas leading to the broiler; that the range had not been disturbed by anybody after it had been put up, and he was positive that the cocks had not been touched either by himself or by Watts. Both he and Watts testified that there was no odor of gas before the explosion and that until the gas was turned on by Watts, it had been shut off entirely from the stove; that he did not light any part of the burners except those on the top, and did not turn the gas on any other part of the range, and did not attempt to light the oven; that he did not ascertain whether all the cocks were closed or not before he directed Watts to turn on the gas; that immediately when the gas was turned on he lighted the burners on top of the stove, and they were lighted as soon as the gas flowed through.

"John Doyle testified that in February, 1896, he was working for the Majestic Range Company, and had been with them about eight years up to that time; that he put the range in the Van Blarcom residence; that all the ranges that are put up by the Majestic Range Company are tested in the factory before they are sent out; that he was familiar with the construction of the Majestic Range; that if gas was permitted to escape into the broilers and oven and there was any light around or about it it would cause an explosion, and that if the gas was in the oven and the burners on top were lighted an explosion would occur; that when he put the range in

the Van Blarcom building all the valves in the gas part of it were left closed.

"At the close of plaintiff's evidence the defendant offered an instruction in the nature of a demurrer to the evidence which the court overruled. The defendant offered no evidence. The jury returned a verdict in favor of plaintiff, assessing her damages at four thousand dollars. Defendant in due time filed his motions for new trial and arrest of judgment which were by the court overruled and defendant appealed.

"1. Where negligence is alleged as a cause of injury the test of defendant's liability is that the consequences of the act complained of were such as in the surrounding circumstances of the case might and ought to have been foreseen by the defendant. [Poeppers v. Railroad, 67 Mo. 715; Stanley v. Railroad, 114 Mo. 606; Railroad v. Hope, 80 Pa. St. 373; Railroad v. Stanford, 12 Kan. 354; Dogget v. Railroad, 78 N. C. 305; Ehrgott v. Mayor, etc., of N. Y., 96 N. Y. 264.]

"Generally speaking, one doing a lawful act upon his own premises can not be held for injurious consequences resulting therefrom, unless the act is so done as to constitute negligence, but if he is using a dangerous article, or instrument, in such a manner or in such circumstances that he has reason to know that it is liable to produce injury, he is responsible for the natural and probable consequences of his act to the person injured who is not himself at fault. [Carter v. Towne and Another, 98 Mass. 567; Dixon v. Bell, 5 Maule & S. 198; Thomas v. Winchester, 6 N. Y. 397; Norton v. Sewell, 106 Mass. 143; Elkins, Bly & Co. v. McKean, 79 Pa. St. 493.] And the degree of care he is required to use depends upon the degree of danger. The duty increases with the degree of danger. [Butcher v. Gas Co., 12 R. I. 149; Koelsch v. Philadelphia Co., 18 L. R. A. 759.]

"As is said in Hutchinson v. Boston Gas Light Co., 122 Mass. 219, 'there must be an omission to do some-

thing which a reasonable man, acting upon the considerations which ordinarily regulate the conduct of human affairs, would do, or the doing something which such a man would not do.' Or, as expressed in Cobb v. Railroad, 149 Mo. 609, 'it is the exigency of the situation, which acting like heat's action on the mercury in the thermometer, determines to what degree prudence must rise in order to reach the mark of ordinary care.'

"But the words, 'ordinary care,' 'due care,' and similar expressions found in the law books, are not susceptible of exact definition applicable to every possible case, for the reason there is no absolute standard by which the conduct of individuality in each particular case can be brought and to which it can be compared and tested. For want of more perfect standard the courts have set up that somewhat shadowy personage, 'the man of ordinary prudence,' by defining ordinary care as being 'such care as ought reasonably to be expected of an ordinarily prudent person in the same situation as the person whose conduct is in question.' [Keown v. Railroad, 141 Mo. 86.]

"From these rules flow the further rule that where the facts are in dispute, or are such that reasonable men might fairly differ upon the question whether the conduct in question was negligent or not, the question is for the jury. [Huhn v. Railroad, 92 Mo. 440; Lynch v. Railroad, 112 Mo. 420; Gratiot v. Railroad, 116 Mo. 450; Eichorn v. Railroad, 130 Mo. 575; Raines v. Railroad, 24 L. R. A. 226.] But it is for the court to determine, in the first instance, whether or not there is any evidence tending to prove negligence. [O'Malley v. Railroad, 113 Mo. 319; Fletcher v. Railroad, 64 Mo. 484; Bell v. Railroad, 72 Mo. 50.]

"It is contended by the defendant that the evidence does not tend to prove negligence; that his omission to see that all the valves in the range were closed before he turned on the gas was not negligence and does not tend to prove negligence. This contention must be

Paden v. Van Blarcom.

answered by applying the foregoing legal rules to the conduct of the defendant.

"As shown by the evidence the range was properly constructed, had been properly set up and was left with all of its valves closed, and had it remained in this condition it would have been entirely safe to have turned on the gas without testing the valves. The explosion did not occur from faulty construction nor from the failure of the person who put it up to leave it in a safe condition. By accident, or from having been tampered with by some intermeddler, the valves supplying the broiler with gas were opened and left open. Defendant had no notice of this condition when he had the gas turned on, neither was the unsafe condition of the range brought about by the defendant nor by anyone for whose conduct he was responsible. If, therefore, he was negligent, his negligence was in omitting to see that the valves were closed which he had no reason to suspect were open.

"The range had never been used by defendant, the gas had not, theretofore, been turned into it and was not, on the occasion, turned on for the purpose of using the range, but for the purpose of testing it. It had been in the house for several days in charge of no one, under the care of no one. Some workmen were still occupied in the house giving it its finishing touches. These were the circumstances existing at the time the defendant turned the gas in the range when the explosion occurred. Defendant was not ignorant of the nature and qualities of gas. He was familiar with the construction and operation of gas cooking ranges and was well aware that if a burner was lighted while gas was escaping into the broiler, an explosion would follow. The agency he was about to employ was a very dangerous one, when not under control, and we do not think in these circumstances, the court should say, as a matter of law, that it was not the duty of defendant to see that there was

Vol 181 mo—9

no means of gas escaping into the broiler before he turned it into the range for the first time.    [1 Thompson on Negligence, sec. 694.]

"In Schmeer v. Keystone Gas Co., 147 N. Y. 529, 30 L. R. A. 653, the gas company, on application of some tenants of an apartment house, turned on gas. Other tenants in the same house did not apply for gas, but their apartments were supplied with gas pipes through which gas escaped into their apartments and injury resulted.    It was held:  'The question is for the jury whether or not a gas company, before permitting gas to be turned in for the benefit of some of the tenants of the apartment house, used reasonable precautions to ascertain that no harm would thereby result to other tenants who had not applied for it by the gas escaping into their rooms.'

"In Chisholm v. Atlanta Gas Light Co., 57 Ga. 28, the question was whether there was sufficient evidence to make out a prima facie cause of negligence for the jury; the facts showing that the property damaged had been vacant; that on the evening of the explosion the plaintiff rented it for the evening, but no gas was used, although fixtures were there; that defendant was notified of the house being vacant, that gas was not needed and must be cut off, which was done by means of a meter cock in the cellar; further, that there were two ways of cutting off the gas, one by the meter cock, the property of the plaintiff, but used by the defendant also; the other by the service cock under the curbstone, the property of the defendant and under its exclusive control; that if the gas had been cut off by the latter method the explosion would not have occurred; the defendant sometimes used the one and sometimes the other method, the service cock under the curbstone being the safer as it was under the exclusive control of the defendant; that the meter examined after the explosion, had been tampered with, a nail being found in the hole of the meter cock used to turn it, though the gas was

turned off when examined, the gas getting into the building in that manner. The court held that the plaintiff having no reason to suppose that any of defendant's gas was on the premises, was not bound to take any precautionary action in relation to the escape, neither for himself nor for tenants, and that the principle, that in conducting its business as a gas producer and furnisher, the company was bound to use such ordinary skill and diligence as was proportioned to the delicacy, difficulty, and nature of that particular business, applied, and further that the evidence being sufficient to be submitted to the jury for them to say whether the explosion was caused by the defendant's negligence or not, the granting of a nonsuit was error.

"In Finnegan v. Fall River Gas Works Co., 159 Mass. 311, where the evidence of the plaintiff tended to show that his intestate was killed by inhaling gas while engaged in the cellar of a building, pursuant to his duty as an employee for the purpose of reading a gas meter, but there was no evidence as to how the gas got into the cellar, nor of the defendant's negligence, beyond the fact that the gas was there and that the ventilators of the cellar were stopped up, it was shown that the defendant, by taking the meter, voluntarily entered into a relation the result of which was to require some one to enter its premises in order to read its meter. The court held it was bound to use reasonable care to prevent the place necessarily entered by the deceased from becoming a death trap, and the jury might have found that it knew or ought to have known of the presence of gas in the cellar in quantities sufficient to be dangerous and that it might have prevented the accumulation by ventilators, or might have put the meter in a different place, and therefore might have found the defendant guilty of negligence.

"In Kimmell v. Burfeind, 2 Daly 155, the plaintiff hired from the defendant the second floor of premises, the basement of which was occupied by another tenant.

In the former's apartments was a gas pipe or fixture, neither covered nor stopped. Gas was introduced into the basement by defendant's tenant's permission in the absence of the plaintiff, who, subsequently discovering the escape, notified the defendant, who tested the pipe and found the escape in one part of the premises, but did not make a thorough search. Upon an explosion occurring the court held the defendant liable for negligence, there being no contributory negligence on the plaintiff's part, the defendant being guilty of a violation of the obligation which enjoys care and caution and of a duty which he owned to his tenant.

"In Barrickman v. Marion Oil Co., 44 L. R. A. 92, it was said: 'A person or corporation engaged in furnishing natural gas to stoves, heaters, pipes, etc., for the purpose of domestic light, heat, and fuel in a dwelling house, is bound to exercise such care, skill, and diligence in all its operations as is called for by the delicacy, difficulty and dangerousness of the nature of the business, that injury to others may not be caused thereby; that is to say, if the delicacy, difficulty, and danger are extraordinarily great, extraordinary skill and diligence are required.'

"These cases seem to us to announce the doctrine that, where an injury results from an explosion of gas, although some precautions had been taken to guard against an explosion, yet if the evidence shows that an effectual means to prevent it was at hand, and the defendant did not avail himself of this means, it is then a question for the jury to say whether or not the defendant was negligent. This doctrine is the legal sequence of the rule that where one introduces a dangerous agency for his own use or emolument, that is controllable by due care, attention or science, he takes upon himself the responsibility of its use. [Holden v. Gas Co., 3 C. B. 1.] No explosion would have occurred had defendant tested the gas valves in his range before turning on the gas. Whether or not his failure to make

the test was negligent, we can not decide as a question of law; therefore, it was properly submitted to the jury.

"2. Instruction numbered 1 given by the court for plaintiff, does not, as contended for by defendant, assume as a matter of law that the defendant was guilty of negligence; on the contrary, it leaves it to the jury to say whether or not the facts in evidence made out a case of negligence. The instruction is supported by the case of Dowell v. Guthrie, 116 Mo. 646.

"The instructions do not conflict. They are not contradictory or repugnant, but on the contrary we think fairly and fully submitted the issues to the jury.

"The judgment is affirmed. *Reyburn, J.,* concurs; *Goode, J.,* dissents on the ground that he deems the decision of the majority of this court in conflict with the decision of the Supreme Court in Fuchs v. St. Louis, 167 Mo. 620, and this case is therefore certified to the Supreme Court."

We have examined with much care the authorities cited in the able briefs of respective counsel, and are satisfied that the law of the case is correctly presented by the clear and logical opinion of the Court of Appeals, handed down therein, and that there is no conflict in the opinion of the Supreme Court in the case of Fuchs v. City of St. Louis, 167 Mo. 620.

We, therefore, approve the opinion of the Court of Appeals, and adopt it as the opinion of this court. All concur.