CATHERINE GAMACHE, by ST. LOUIS UNION TRUST COMPANY, Her Curator, Respondent, v. JOHNSTON TIN FOIL AND METAL COMPANY, Appellant.

St. Louis Court of Appeals, February 13, 1906.

1. MASTER AND SERVANT: Negligence: Prima Facie Case. In an action by a minor child for damages on account of death of her father, caused by the negligence of the defendant, his employer, where the testimony showed that he was killed by the explosion of a fly wheel in the defendant's factory where he was employed, that an automatic "Governor" was necessary in order to prevent the fly wheel from revolving too rapidly, that the "Governor" broke, and before a new one was installed the revolutions of the fly wheel were regulated by

the engineer sitting at the throttle to regulate the admission of the steam into the cylinder, that that method of regulation was impracticable, that the deceased was taken from his regular business and put to regulating the throttle, and while doing so, the motion of the fly wheel became so rapid that the explosion occurred and caused the death, plaintiff made out a prima facie case.

2. **DEATH CLAIM: Elements of damage to minor child.** In an action by a minor child for damages on account of the death of her father caused by defendant's negligence, the plaintiff was entitled to recover for loss of support, education and maintenance, and the intellectual and moral instruction of the deceased parent.

3. ————: ————: **Excessive Verdict.** In an action by a minor child 13 years of age for damages on account of the death of her father caused by defendant's negligence, where it was shown that the father was a man of exemplary character, and that she was obliged to depend upon him for maintenance and education, a verdict for $4,200 was not excessive.

4. ————: ————: **Instruction.** In such cases where the instruction for plaintiff in relation to the measure of damage was general, pointing out no particular element of damage, and where the defendant neither asked instructions defining the elements of damage, nor discussed that subject to the jury, the defendant cannot be heard to complain that the jury's discretion in estimating damage was too large and the verdict excessive for that reason.

Appeal from Franklin Circuit Court.—*Hon. Robert S. Ryors*, Judge.

AFFIRMED.

*McKeighan, Wood & Watts* and *Wm. R. Gentry* for appellant.

(1) The demurrer to the evidence should have been sustained: Cagney v. Railroad, 69 Mo. 416; Devitt v. Railroad, 50 Mo. 302; Matthis v. K. C. Stock Yards Co., 185 Mo. 434, 84 S. W. 66; Spiva v. Mining Co., 88 Mo. 68; Epperson v. Telegraph Co., 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050; Roberts v. Telephone Co., 66 S. W. 157; Miller v. Cordage Co., 126 Fed. 195; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102. (2) The verdict is so grossly excessive as to show that it is the result of bias, prejudice, or mistake or passion. The

only instruction given to the jury intended to guide them in their deliberations as to the amount of the verdict which they should render was No. 2, given by the court, which was as follows: "The jury are instructed that if you find for the plaintiff you may in your verdict give her such damages, not exceeding $5,000 as you may deem fair and just under the evidence in the case with reference to the necessary injury resulting to her from the death of her father." (3) In the State of Missouri the question of the amount of damages to which a child is entitled for the loss of its father is purely a matter of dollars and cents—damages being allowed for the pecuniary loss to the child and for no other loss. It is well settled in this State that the child or wife is not entitled to recover for the following: Pain of body or mind suffered by the deceased; grief on account of the loss of the one who was killed; loss of the society of the deceased; loss of the love or affection of the deceased. These are all excluded by our decisions in this State, as shown by the following authorities: McPherson v. Railroad, 97 Mo. 259, 10 S. W. 846; Barth v. Railroad, 142 Mo. 556, 44 S. W. 778; Parsons v. Railroad, 94 Mo. 298, 299, 6 S. W. 464; Knight v. Lead and Zinc Co., 75 Mo. App. 549; Goss v. Railroad, 50 Mo. App. 624.

*Johnson, Houts, Marlatt & Hawes* for respondent.

The verdict is for a just and fair amount and should not be disturbed. (a) Plaintiff is entitled to recover not only for the loss of support, maintenance and expense of education, but also for loss of nurture, instruction, and physical, intellectual and moral training by the parent. Stoher v. Railroad, 91 Mo. 518, 4 S. W. 389; Tilley v. Railroad, 29 N. Y. 286-287; Board v. Legg, 93 Ind. 530; Railroad v. Wightman, 29 Grat. 443. (b) The evidence in this case justifies the assessment of damages for all of above elements. 13 Cyc. of Law and Procedure, 371; Railroad v. Haist, 71 Ark. 258, 268; Railroad v. Sweet, 60 Ark. 550, 559; Scales v. Railroad, 32 W. Va. 370; 2 Sedgwick Damages, par 579, note. (c)

The amount of damages, not being capable of exact mathematical calculation, is for the jury to determine. Parsons v. Railroad, 94 Mo. 298, 6 S. W. 464; Blockwell v. Hill, 76 Mo. App. 55. (d) There being no showing that the jury were actuated by bias or prejudice, and the trial court having approved the verdict, this court should not disturb it. Snider v. Railroad, 108 Mo. App. 234, 83 S. W. 530; Pauck v. St. L. D. B. & P. Co., 166 Mo. 646, 66 S. W. 1070; Hollenbeck v. Railroad, 141 Mo. 97, 38 S. W. 723, 141 S. W. 887; Curtis v. McNair, 173 Mo. 294, 73 S. W. 167; Longan v. Weltmer, 180 Mo. 322, 79 S. W. 655.

GOODE, J.—The plaintiff, Catherine Gamache, a child thirteen years old, sues by her curator. She is a daughter of Alphonse Gamache, who was killed in the defendant's factory on August 4, 1904. The factory is in St. Louis and among the articles manufactured is tinfoil. The plates of tinfoil were made by running ingots of metal some ten inches long between heavy revolving rollers. The rollers were turned by a steam engine to which was attached an eight-foot flywheel of great weight and revolving one hundred and seventy-five times per minute. When one of the ingots was passed through the rollers, the load on the rollers required more power from the engine to rotate them than when there was no ingot between them. To give the increased power, more steam was required in the steam chest or cylinder of the engine. Hence, if the same head of steam was kept on all the time, the flywheel would revolve much more rapidly when the rollers were running light than when they were loaded. To control the revolutions of the machinery, an appliance called a governor was attached to it. The operation of this appliance regulated the quantity of steam which passed into the cylinder of the engine, letting in more when the rollers were loaded and less when they were not; thus making the revolutions uniform and preventing the flywheel from revolving too rapidly. The testimony that such an appliance is necessary and that

it is practically impossible to run an engine in safety without one, is very strong and we may say convincing. The governor worked automatically and controlled a valve which admitted steam into the cylinder. On July 21st, which was fourteen days before the accident, the. governor broke and was removed, and from that time to the day of the accident the engine was operated without a governor. A new governor was ordered from Salem, Ohio, and reached St. Louis about a week before the tragedy, but for some reason was not attached to the engine. The testimony for the plaintiff tends to show it was not attached because the company owning the factory didn't wish to shut down the machinery long enough and were waiting for an idle Sunday in which to put on the new governor. The testimony for the defendant indicates that it was not put on because it was not ready for use. After the old governor broke, the revolutions of the machinery were regulated by the engineer sitting at the throttle and, with his hand, opening it wide to admit the steam into the cylinder when the rollers were loaded and partially closing it when they were not. In other words, the engineer acted as a governor. Occasionally he would call some other employee to the throttle to do the work. Gamache's business was running ingots through the rollers; but on the day he was killed, he had been placed at the throttle to act as governor. It is impossible to run the machine with safety without an automatic governor, because the opening and closing of the throttle which is necessary in order to keep the proper amount of steam in the cylinder as the rollers run first heavy and then light, requires such instantaneous action by a man, that the nerve tension becomes too great and brings about irregular control of the throttle. One of the experts said a man would have to open and close it at the "psychological moment," and another one, who is the city inspector of boilers, that it was only a matter of time until the machine would run away if it had no automatic governor on it; that no man could long control the engine, which

should be shut down at once whenever the governor broke. While Gamache was regulating the throttle, the motion of the flywheel became so rapid that the wheel burst and one of the fragments struck Gamache, almost decapitating him and producing instant death. This action is to recover damages for that accident. The negligence alleged is in running the machine without a governor when the defendant knew it was dangerous to do so. Plaintiff obtained judgment for $4,200 and the defendant appealed. Beyond all doubt, the evidence made a case for the jury on the main question of whether the defendant had been guilty of negligence which caused the death of Gamache. There was no evidence that Gamache was guilty of any negligence which contributed to his death, and probably the trial court would have been justifiable in directing a verdict for the plaintiff. We overrule the contention that a demurrer to the plaintiff's evidence should have been sustained.

It is strenuously insisted that the verdict was excessive and the judgment should be reversed on that account. In this connection, the defendant's counsel cites the instruction given on the measure of damages, which was of a general character and similar to an instruction approved by the Supreme Court in the case of Barth v. R. Co., 142 Mo. 535, 44 S. W. 778. The instruction the court gave is admitted to be correct but the contention is that because of its generality, the jury were too much influenced by sentiment in fixing the plaintiff's damages. The defendant requested no instructions pointing out the particular elements of damage which the jury should consider in assessing the amount of plaintiff's recovery, as should have been done if more definite advice on the measure of damages was desired. Plaintiff was entitled to recover for the loss of support, education and maintenance and also the loss of intellectual and moral instruction from her deceased parent. It appears plaintiff's mother was living at the time of the death of the father,

but the two were separated and the child lived with her father, who was shown to be a man of exemplary character in all respects. As to the character of the mother and whether she would fill the place of the dead father, the record is silent. In Stoher v. R. Co., 91 Mo. 518, 4 S. W. 389, it was said that a parent's care in educating, maintaining and supporting a child has, in addition to its moral value, an appreciable pecuniary value because it aids in fitting the child for the struggles and duties of life. It is said, too, that in cases where minor children sue for damages for the death of a father, juries are not confined to an exact calculation of the amount of the child's loss, but are vested with considerable discretion which the courts will not interfere with unless it is abused. That decision of our Supreme Court approved the opinion in Tilley v. Hudson River Company, 29 N. Y. 252, in which it was pointed out that the physical, mental and moral training of a child by a conscientious parent, were to be considered as having pecuniary as well as a moral value, in estimating the loss sustained by the child from the death of a parent. In that case, a verdict for $5,000 for the death of a mother was allowed to stand. We think the evidence regarding Gamache's character proves that he was well fitted to train his child along right lines and mould her into a good woman. To be deprived of the affectionate guidance and admonition of such a parent, is an element to be considered by a jury in making up the amount of damages which a plaintiff ought to receive. [13 Cyc. 371; St. Louis, etc., R. Co. v. Haist, 71 Ark. 258; Searle v. R. Co., 32 W. Va. 370.] We cannot say conscientiously that the jurors who tried this cause were not as competent to estimate the damages sustained by the plaintiff from the loss of her father as we are. There is no certain criterion for fixing such damages, and the question is one within common knowledge and experience and peculiarly suited for determination by a jury. Unless the amount assessed as damages in a cause like this one, was so enormous as either

to show passion and prejudice on the part of the jury or leave no doubt that it was unjust, we would not interfere with it. Moreover, as the defendant requested no instruction defining the elements of damages, it chose to leave the matter largely to the jury's discretion. It was conceded on the argument in this court, that defendant's counsel refused to argue the case before the jury. An argument presenting the defendant's side of the question in a favorable light, would have assisted the jury in their effort to ascertain the damages which ought to be given. In view of the fact that the defendant neither asked instructions defining the elements of damage nor discussed the subject to the jury, we think it would be manifestly unfair to reverse the judgment on the ground that the verdict was excessive, unless the point was perfectly clear. We are far from confident that it was excessive. It received the approval of the trial judge and that circumstance is entitled to weight. The judgment is affirmed. *Bland, P. J.,* and *Nortoni, J.,* concur.