GEORGE SIPPLE, by Next Friend, BERTHA SIPPLE, Respondent, v. THE LACLEDE GASLIGHT COMPANY, Appellant.

St. Louis Court of Appeals, May 14, 1907.

1. GAS COMPANIES: Negligence: Degree of Care. Gas companies are required to use ordinary care to prevent gas escaping to the injury of others, but the dangerous character of the commodity and its tendency to escape requires that ordinary care in that case shall be proportionate to the probable dangers; that is, extraordinary watchfulness and skill is required to meet the rule of ordinary care.

2. ———: ———: Prima Facie Case. In an action against a gas company for damages caused by the defendant's negligent permitting the escape of gas, a prima facie case is made out by showing the break or leak in the main and the consequent escape of the gas, which caused the injury; such proof is sufficient to sustain the inference of negligence by the jury.

3. ———: ———: ———. Notice of a leak in a gas main was conveyed to the company about noon, the inspector of the company reached the place about seven o'clock in the evening, the men to repair the leak arrived about ten o'clock that night and after working until two o'clock in the morning, suspended operations, the leak was not mended until the afternoon of the next day, this was not the diligence required in caring for the dangerous commodity and the company was liable for the death of a person sleeping in the vicinity that night, caused by the escaping gas.

4. ———: ———: Pleading: Variance. Where in the petition in an action brought by the son of the deceased for damages in such case, the negligence alleged was in permitting the main to become defective, but contained also the allegations that the defendant knew, or by the exercise of care might have known of the defect, it was proper to permit a recovery on the theory that the defendant knew of the defect or leak, or by the exercise of ordinary care might have known it, and after knowing it, failed to exercise such care.

5. PARENT AND CHILD: Element of Damage: Care and Education. In an action by a child for death of a parent, the loss of the parent's care and the education of the child is an element of damage as having an appreciable pecuniary value in improving the child and fitting it for a more prosperous career.

125 App—6

6. ———: ———: ———: Custody of Child. Such damages may be awarded a child for the death of its father, although he was divorced from the mother and the latter had been awarded the custody of the child; the child, not being a party to the divorce proceeding, could be in no sense bound by the judgment.

7. DAMAGES: Death Claim: Instruction: Measure of Damages. In an action by a child for the death of its father, an instruction which permitted the jury to award "any sum not exceeding $5,000 that you may deem fair and just, having reference to the necessary injury, if any, resulting to plaintiff by reason of the death," is not reversible error, where the defendant asked instructions, which were given, on the measure of damages.

Appeal from St. Louis Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Percy Werner* for appellant.

(1) The burden of proof was upon the plaintiff to prove the negligence charged. Holly v. Gaslight Co., 8 Gray 123. The jury should have been directed to return a veridct for the defendant: (a) because there was no evidence that the defect in the pipe was due to any negligence on the part of the defendant; (b) because the mere fact of the breakage is no evidence of negligence; (c) because the evidence wholly failed to show that the injury sued for was one which might reasonably have been anticipated, or that it was the natural and probable result of a leak of gas in the open street. Fuchs v. St. Louis, 167 Mo. 645; O'Malley v. Railroad, 113 Mo. 319. (d) If the question as to whether defendant took all the usual and ordinary precautions to avoid injury, after notice of the leak, is presented by the issues, then there is a total failure of proof to the contrary. (e) The evidence shows that the gas at best was only one of a number of factors entering into the cause of the death, and as such at best only hastened, but was not the cause of, death, for which there is no liability under the statute. Jackson v. Railroad, 87 Mo. 422. (f)

There is no liability for an accident happening under circumstances outside the range of ordinary experience, and extraordinary and exceptional. Hysell v. Swift & Co., 18 Mo. App. 48. No man is required to anticipate an accident which has never occurred before, or held negligent if he fails to do so. Graney v. Railway, 157 Mo. 683. (2) Plaintiff's instruction covering the measure of damages was erroneous: (a) it failed to confine the jury to the evidence or to point out the elements of damages to be taken into consideration (Goss v. Railway Co., 50 Mo. App. 614); (b) the child having been given over by decree of court in the divorce case to the custody and control of the mother, was thereafter not entitled to the "care and education" of the father. Tiffany's Persons and Domestic Relations, sec. 118, p. 238.

*Rassieur & Buder* for respondent.

(1) Appellant contends that there was no evidence that the defect in the pipe was due to any negligence on its part. Counsel evidently overlooked that it has been repeatedly held that gas companies are bound to supply pipes of sufficient strength to stand all lawful uses to which the public street in which they are laid be put, and that they are responsible for all damages resulting in the leaking of pipes in consequence of such use. Brown v. Gaslight Co., Anthon's Reports 351. Gas Co. v. Robinson, 99 Pa. 1. (2) Secondly, appellant contends that the mere fact of the breakage is no evidence of negligence. In the case of Smith v. Gaslight Co., 121 Mass. 322, it was held "that there was evidence enough of want of proper care on the part of the defendant to make it responsible, on the ground that it was bound to conduct its gas in the proper manner, and that the fact that the gas escaped was prima facie evidence of some neglect on the part of the defendant." Carmody v. Gaslight Co., 162 Mass.

539. (3) Plaintiff's instruction referring to the measure of damages is approved by the following cases, to-wit: Stoner v. Railway, 91 Mo. 509; Gamache v. Metal Co., 116 Mo. App. 596; Barth v. Railway, 142 Mo. 536.

STATEMENT.—The plaintiff, an infant boy, sues by next friend, his mother, for the wrongful death of George Sipple, his father. It is in substance alleged that defendant gas company negligently permitted one of its mains to become defective and leak, whereby illuminating gas escaped into the room in which plaintiff's father was sleeping, causing his death by asphyxiation, and that defendant knew, or by the exercise of ordinary care, might have known of the defective condition and averted the consequent death. In order to bring the case within the provisions of the wrongful death statute (Revised Statutes 1899, secs. 2865, 2866), plaintiff introduced formal proof to the effect that the deceased left no wife surviving him, the plaintiff's mother having been recently divorced from his father; that plaintiff is his only child, a minor about five years of age; that no prior suit had been instituted on account of his death, and more than six months had elapsed since the death occurred. And further, the evidence on the part of the plaintiff tended to prove his deceased father was a strong and vigorous man of about thirty-five years of age, enjoying good health at the time of his death. He earned, when employed, from ten to fifteen dollars per week. For three or four years prior to his death, except six months immediately previous, he had been addicted to excessive drinking of intoxicants, and it appeared in the cross-examination, that because of this, he had become indolent, did not attend regularly to his labors during that time, and had, in some respects, been unkind to his wife when drinking and provided only scantily for his family. All of the evidence tends to show, however, that he was deeply attached to, and manifested great kindness toward his little son.

His wife had recently been divorced on allegations of indignities offered to her, and by the decree of divorce, the care and custody of the infant plaintiff was awarded to the mother. There is substantial proof tending to show that for six months next prior to his death, the father had reformed and conducted himself with a becoming degree of sobriety, and had frequently called upon his divorced wife in an effort to induce her to reconsider her action and remarry with him, on which occasions, he gave no evidence of drinking and gave numerous promises of reform. At the time of his death, the deceased lived with his brother at No. 2704 Chippewa street, in the city of St. Louis, and occupied the front room on the first floor at that number as his bedchamber. As to his death and the alleged negligence of the defendant which caused it, the evidence tended to prove that about noon, January 14, 1905, a young lady passing in front of the adjacent dwelling, No. 2706 Chippewa street, being attracted by the odor of escaping gas, telephoned the main office of the company to the effect that there was a leak at that number. About three o'clock in the afternoon, the gas company notified one of its inspectors having charge of the district, of this and other reported leaks. The inspector proceeded to look after the several complaints and reached No. 2706 Chippewa street about seven o'clock that evening. Finding the meter and main thereat secure, he examined around the walls of the basement and discovered gas exuding therefrom, which indicated the location of the defect in the mains to be at a point in the street which could not be remedied by him alone. He thereupon reported the matter, and the proper officer of defendant dispatched thereto what was known as the "trouble wagon" in charge of a foreman and a number of men. These men reached the scene and began sinkng holes in the street in an endeavor to locate the exact point of leakage and repair it, at about ten o'clock that night.

They continued their labors until about two o'clock in the morning, at which time, not having discovered the break in the main, it is said they "vented it" so as to prevent a further escape of gas into the basement of 2706, quit the task and went away until seven o'clock Sunday morning, at which time the foreman, with three men, returned and labored until about two or three o'clock Sunday afternoon, when the leak was discovered to be a recent break in the four-inch main beneath the surface of the street near the room occupied by plaintiff's father. The crack in the main is said to have appeared to be of a few days standing. It was shown there was no gas consumed in the residence wherein the plaintiff's father resided, nor was the gas connected with that dwelling except to a range in the kitchen. There was no odor of escaping gas in the dwelling during the afternoon and evening of January 14. About ten o'clock that night, the gas men inquired of the family with respect to this matter and plaintff's father answered that there was no gas odor there, and if it was escaping, it must be in the next house; and immediately thereafter, healthy, strong and in good spirits, he retired, about ten o'clock, in the front room on the first floor. This room was near the point where the gas leak was subsequently located, and the bed occupied by him, about twenty-five feet therefrom. The deceased's brother went into the room about fifteen minutes after plaintiff's father had retired, for the purpose of locking the front door, and no odor or indication of gas was noticed by him. There was a door and window which opened onto the street toward the gas leak. Deceased's brother and wife occupied the second room from the front, with the doors closed between, and upon arising Sunday morning, deceased's brother felt some dizziness and his wife noticed some headache, and others thereabout noticed a slight sickness of the stomach. No one noticed a gas odor, however. About ten-thirty on the

same morning, the room in whch plantiff's father had retired, was opened and found to contain a great quantity of gas, said to be "enough to kill a dozen men," which gas, the evidence tends to show, was driven into the room by the wind from the street through the crevices around the door and window. The deputy coroner, a physician, who conducted an autopsy over the remains recited his observations, indicating death from illuminating gas poisoning, and gave an opinion that the deceased came to his death by asphyziation, by inhaling the gas, etc. There was other substantial evidence to the same effect.

Defendant introduced evidence tending to prove that the deceased had been an inebriate for three or four years prior to his death; that he frequently complained of severe pains in the region of his heart, and at times would lie across the bed in apparent agony therefrom. A physician who had treated him, and who was placed upon the stand by the defendant, did not sanction the theory of heart ailment, however. He testified the deceased had no trouble whatever with his heart; that he had suffered from catarrhal condition of the stomach caused by drink, and the pains in the region of the heart were superinduced by this, rather than a conditon of the heart. He also stated: "He was a very strong man and I do not think liquor would have such great effect in such a short time." Certain expert testimony on the part of the defendant tended to prove that the death resulted from several causes combined, the gas being a factor only. The causes of death as enumerated by these experts, were, from the weakened condition of the system and the condition of the nerves controlling the heart action, both superinduced by drink, together with the gas, which was a factor. One of these experts, however, said, in his opinon, the gas was the primary cause. There is no doubt upon reading the entire evidence, the impression one receives is irresist-

ible to the effect the deceased came to his death from inhaling the gas. There is an abundance of evidence supporting this theory of the case, and in truth, the defendant's theory that his death resulted from heart trouble, scarcely finds substantial support in the record before us.

The issues were referred to a jury, under instructions, and a verdict of $2,000 was returned for the plaintiff. Defendant appeals.

NORTONI, J. (after stating the facts)—1. The jury were amply authorized on the proof to find the deceased exercised due care on his part. He retired as he had a right to do, in his private apartment, which at that time was devoid of odor and gave no indication that the gas was then present or that it would likely reach and permeate the atmosphere in the room.

There was no direct proof introduced on the part of the plaintiff tending to establish any specific neglect of duty on the part of the defendant with respect to the defect or crack in the main from which the gas escaped, the entire proof on this question being that by the odor, gas was discovered to be escaping in the vicinity about noon on Saturday and that when the leak was finally ascertained and precisely located on the following day, it was found to have been caused by a crack in defendant's four-inch gas main, located in the street in near proximity to the room in which deceased was asphyxiated. Defendant's superintendent of street department, on behalf of plaintiff, testified: "The crack was a new crack. It could, I think probably have existed a few days." This was all the material proof on that score. On this state of the case, it is earnestly insisted on behalf of the defendant that the court should have granted its request and directed a verdict acquitting it of negligence. Now it is true plaintiff's action

predicates upon the negligence of the defendant. The primary omission of duty assigned in the petition is that defendant negligently permitted its main to become defective, whereby gas escaped, and it is very true, the law with respect to injuries entailed by escaping gas, when the suit is founded upon defendant's alleged neglect of duty with respect thereto, it is said, is not different from the law of negligence in other cases, in so far as it devolves upon the plaintiff the burden of establishing by proof that the defendant failed in the exercise of due care, concerning the act of which complaint is made. [Holly v. Boston Gas Light Co., 8 Gray (Mass.) 123; Washington Gas Light Co. v. Eckloff, 4 App. Cases (D. C.) 174; Thornton on Law Concerning Oil and Gas, sec. 610; 14 Amer. & Eng. Ency. Law (2 Ed.), 938.] While this proposition is abundantly sustained by the authorities, it seems to be much relaxed by the courts in its practical application in cases where injuries have resulted from escaping gas. It is denied, however, by the Court of Appeals for the District of Columbia, in Washington Gas Light Co. v. Eckloff, 4 App. Cases (D. C.) 174, that the doctrine of *res ipsa loquitur* applies. We have been unable to discover a Missouri case in point, in matter of fact, although the judgment of both this court and the Supreme Court in Paden v. Van Blarcom, 181 Mo. 117, 74 S. W. 124, 79 S. W. 1195, 100 Mo. App. 185, is identical in principle with the views which we entertain on the question now in judgment. From a careful study of the gas cases elsewhere, and with due attention to the judgment of the soundest courts and opinions of the ablest judges in the country, we have been able to deduce and ascertain the rule that in view of the highly dangerous character of the commodity being transmitted by the gas company through its mains, and because of its well-known tendency to escape therefrom through the earth and permeate the atmosphere as an element not only entailing possible but probable death and dis-

aster, the principle applicable to its transmission and conduct is that the producer or transmitter of the gas, is required to conduct his operations in that behalf with a very high degree of care and skill. It being an extraordinarily dangerous element, an extraordinarily high degree of skill and care is exacted by the law of those conducting it; that is to say, the rule of ordinary care with respect to its transmission is adjusted, in view of its known dangers and probable entailments, by a standard of care proportionate to the probable dangers which usually attend the delicacy, difficulty, nature and dangers of the business as natural consequences (Thornton on Oil and Gas, secs. 601, 602) even though this degree of care might extend the requirement in that behalf slightly beyond the general rule with respect to the exercise of ordinary care to avoid such dangers only as are to be reasonably anticipated in the conduct of a particular business. [See Oil City Gas Co. v. Robinson, 99 Pa. St. 1; Paden v. Van Blarcom, 181 Mo. 119, 100 Mo. App. 195; Thornton on Oil and Gas, secs. 601, 602.] And therefore, under the influence of this principle, the mains being made to contain gas and conduct it safely, it was defendant's duty to exercise that high degree of care mentioned to see they were constructed in proper form and of proper materials; that they were laid in the earth at a proper depth and in a suitable manner so as not to be affected by the frost, and kept in proper repair for the purpose intended, and upon the application of the sound and just principle stated, the courts have universally adjudged, in the absence of an intervening agency appearing, which negatives the idea of negligence on the part of the gas company, that prima facie proof is made on the question of negligence by showing the break or leak in the main and consequent escape of gas which operated proximately to cause the loss. Such proof is sufficient to sustain the inference of negligence by the jury. The following

authorities are in point: Smith v. Boston Gas Light Co., 129 Mass. 318; Finnegan v. Fall River Gas Co., 159 Mass. 311; Carmody v. Boston Gas Light Co., 162 Mass. 539; Greaney v. Holyoke Water & Power Co., 174 Mass. 437; Chisholm v. Atlanta Gas Co., 57 Ga. 28; Butcher v. Providence Gas Light Co., 12 R. I. 149; Mose v. Hastings, etc. Gas Co., 4 Foster & Finlason's Reps., 324; 14 Amer. and Eng. Ency. Law (2 Ed.), 936-938-940, and a great wealth of authorites cited in the notes; Thornton on Oil and Gas, secs. 601-663.

It would seem from some cases that the courts have almost applied the doctrine of *res ipsa loquitur* when there was no proof of negligence other than the mere breaking of the main; but, as said before, the propriety of applying this doctrine is expressly denied by the Court of Appeals of the District of Columbia in the case cited supra, and the Supreme Court of Massachusetts says the true rule in dealing with the question is as one of negligence, as follows: "As a matter of law, the breaking of a pipe and the consequent escape of gas, proved negligence. *The true rule is, that a jury may find negligence from those circumstances,* but it is for them to say whether they will do so; and if there are other circumstances bearing on the question, they must weigh them all." [Carmody v. Boston Gas Light Co., 162 Mass. 539-542.] The question was properly referred to the jury.

There is another feature of the case made by the proof which amply justified the court in submitting the issue of negligence to the jury. It is shown notice of the leak of gas was conveyed to defendant about noon on Saturday; that in the usual course, an inspector reached the scene about seven o'clock that evening, and finding himself unable to locate and remedy the defect, notified the proper officer, who in turn, dispatched the "trouble wagon" and men for that purpose. These men reached the scene about ten o'clock at night, commenced exca-

vating and continued thereat until about two o'clock a. m., when they suspended operations until seven o'clock Sunday morning. It is well settled that when the gas company has received actual notice of a leak in its mains, great diligence is required in locating the cause and applying a remedy. Of course this must follow in consequence of the highly dangerous character of the commodity, and unless it is in a case of great calamity or emergency, such as an earthquake, explosions, the conflagration of a portion of a city, or something tending to produce many leaks at the same time, it is said that there should always be men in readiness for such purpose, and action looking to repairs should be had with promptness. [Mose v. Hastings, etc., Gas Co., 4 Foster & Finlason's Reps. 324; Hunt v. Lowell Gas Co., 3 Allen (Mass.) 418; Consolidated Gas Co. v. Crocker, 82 Md. 113; 14 Amer. and Eng. Ency. Law (2 Ed.), 940; Thornton on Oil and Gas, sec. 616.] The facts gleaned from the record before us and above set out certainly did not show that degree of diligence required by the law in the case of escaping gas after actual notice of the leak. The law requires promptness and dispatch to fill the measure of ordinary diligence in such cases, and there was certainly no such diligence shown by the proof. The learned trial judge properly referred the issues to the jury.

2. At the instance of the plaintiff, the court gave the following instruction:

"The court instructs the jury that if you find and believe from the evidence that defendant owned and controlled the gas mains, pipes and apparatus mentioned in the petition and transmitted gas through the same, and that on the 15th day of January, 1905, in the city of St. Louis, Missouri, part of said main, pipes or apparatus was defective and in a leaking condition and gas was escaping therefrom; that at said time one George Sipple, the father of plaintiff, occupied a room in house

No. 2704 Chippewa street, in close proximity to such
defective or leaking main, pipe or apparatus, if you so
find, and that said room became filled with such escap-
ing gas, and that in consequence said Sipple died by
asphyxiation; and if you further find that defendant
knew of such defect or leak, if any, or by the exercise
of ordinary care on its part might have known thereof,
and after knowing thereof, by the exercise of ordinary
care, could have avoided the injury sued for, and failed
to do so, then defendant is liable and plaintiff is entitled
to recover."

It is asserted that this instruction permits a
recovery for the negligent omission to prevent the es-
cape of gas after defendant knew, or by the exercise of
ordinary care might have known, of the leak, when the
act of negligence complained of in the petition is in
negligently permitting the mains to become defective.
We are not inclined to concur in the construction placed
upon plaintiff's petition by the learned counsel. It is
true the primary negligence charged therein is as stated,
but in a subsequent clause, it alleges pointedly that "de-
fendant or its servants in charge thereof knew, or by
the exercise of ordinary care might have known of the
defective, worn-out and leaking condition of said main,"
etc. Now the proof was uncontroverted that defendant
and its servants did know of the defective condition of
the main, having been notified at noon on Saturday of
the leak and the instruction therefore was properly pred-
icated upon both the petition and proof. The remain-
ing criticism of this instruction advanced in the briefs is
sufficiently answered by what has been said under point
one in the opinion.

3. The decree divorcing plaintiff's mother from his
father was introduced in evidence and from this ap-
pears the court awarded the care and custody of the in-
fant plaintiff to his mother. In view of this decree, the
instruction of the court on the measure of damages to

the effect that plaintiff was entitled, during the period of his minority, to the care, education, maintenance and support of his father, is assigned as error. It is argued that the care and custody of the plaintiff having been awarded to the mother, the plaintiff was not entitled to the "care and education" of the father, and the common law doctrine that there is no obligaton other than a moral duty, that is, no legal duty resting upon the father to educate the child, is cited. [Tiffany's Personal and Domestic Relations, sec. 118.] Whatever may be the rule at common law, the courts of this State adhere to the doctrine announced by the Supreme Court of New York on the subject, in Tilley v. Railroad Co., 29 N. Y. 252, and McIntyre v. Railroad Co., 37 N. Y. 287, to the effect that the loss of a parent's care in the education, maintenance and pecuniary support of the child, has, in addition to their moral value, an appreciable pecuniary value tending to improve and perfect the child for not only a more useful future from social considerations, but a more prosperous career in the business and commercial world as well. [Stoher v. Railroad, 91 Mo. 509, 4 S. W. 389; Gamache v. Johnston Tin Foil, etc., Co., 116 Mo. App. 596, 92 S. W. 918.] This feature of the instruction is therefore not subject to the criticism.

As to so much of the criticism which deals with the question of the care of plaintiff having been awarded to the mother, it may be said the plaintiff under our law, had the right to the care of his father notwithstanding the divorce decree (Rankin v. Rankin, 83 Mo. App. 335), and this right could not be divested by a decree to which he was not a party. Indeed, the father, under the decree of divorce, may not have had the right to the care and custody of the plaintiff, and even though that decree adjusted the rights of the father and mother with respect to his care and custody, yet the plaintiff's right with respect to care and support as against the father was in no sense precluded by a judgment to which he

was not a party.   This proposition is so elementary as not to require the citation of authorities.

This instruction further directed the jury: "You may award him any sum, not exceeding $5,000, that you may deem fair and just, having reference to the necessary injury, if any, resulting to plaintiff by reason of the death of his father, George Sipple." The criticism is that it is a general direction permitting the jury to roam in the field of conjecture, inasmuch as no rules are therein contained directing attention to the proper elements of loss. This general instruction has been frequently approved when it sufficiently follows the statute by confining the recovery to an amount that is "fair and just" the jury "having reference to the necessary injury resulting therefrom." [R. S. 1899, sec. 2866.] And the doctrine is, if the defendant desires a more specific direction on the subject, it becomes its duty to request it. [Barth v. Railway, 142 Mo. 535, 555; Gamache v. Johnston Tin Foil Co., 116 Mo. App. 596; Stoher v. Railway, 91 Mo. 509.] It appears that the court gave, at the instance of defendant, five separate instructions in the measure of recovery in which correct rules on the subject were set forth, and the jury were therefore possessed of ample information of what were and what were not proper elements of damage. In view of this record, the instruction given at the instance of plaintiff, even though incomplete, would be harmless error.

4.   Defendant's requests confining the recovery to mere nominal damages, were properly refused, even though the evidence failed to show the amount plaintiff's father was earning at the date of his death. [Stoher v. Railway, 91 Mo. 509.]

The verdict of two thousand dollars was not excessive. The case was well and carefully tried. Finding no reversible error, the judgment will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.