Belknap,
June, 1898.

## Dow *v.* Winnipesaukee Gas and Electric Co.

It is no defence to an action for injuries caused by the escape of gas from a defective pipe, that the owners were not notified of its condition.

In such case the liability of the owners is not dependent upon their knowledge of the defect, but upon their observance of care in maintaining the pipe in a reasonably safe condition and so using it as not unnecessarily to injure others.

A florist whose plants have been injured by escaping gas is not entitled to recover special damages for injury to his business reputation resulting from sales of plants which were thought to be unaffected, but proved to be unsound.

CASE, for negligently permitting the escape of gas whereby the plants in the plaintiff's greenhouses were injured and destroyed, and the plaintiff was otherwise injured in his business as a florist. Facts found by the court.

The plaintiff is a florist at Laconia. In March, 1897, he was damaged by the escape of gas through a break in a pipe located in the street in front of his premises. The escaping gas permeating through the ground entered his houses and killed his growing plants. The break was due to the improper, careless, and unskillful manner in which the pipe was laid, and would have been prevented by the exercise of ordinary care and skill in laying the pipe. The pipe was laid by the Winnipesaukee Gas and Electric Light Company. This company became insolvent and its property came to the hands of an assignee, who, on March 16, 1897, sold the same to one Aldrich, as trustee for certain persons who had arranged to form a new corporation for the purpose of purchasing the property of the insolvent company and carrying on with their plant the business of manufacturing and distributing gas.

Articles forming the defendant corporation were drawn, executed, and recorded in the office of the city clerk of Laconia on March 16, and three days later, in the office of the secretary of state. After March 16, the new corporation and the persons interested in forming it had the entire control and management of the business, and the defendants received all the income and paid all the expenses from that date. Aldrich conveyed to the defendants on April 12.

March 13, the plaintiff first noticed trouble with his plants, the leaves of some of the more delicate, nearest the street, dropping off. Three or four days later other plants began to be affected. The plaintiff was unable to discover the cause until, on March 22, it was thought a smell of gas was detected. He notified the defendants, and on that day one Bledsoe, who was in charge of their gas works, came to the greenhouse, but failed to discover any trace of gas. March 23, upon further complaint by the plaintiff, Bledsoe made another examination and found that gas was entering the house.

No attempt was made to remedy the trouble until March 25, when a portion of the pipe in the street was dug up and some repairs made. The flow of gas still continued, of which the defendants were notified, and on March 30, the attempt at repair was renewed, the break found and repaired. By the exercise of due care the defendants could have found and repaired the break as early, at least, as March 24, the day after the existence of gas in the plaintiff's greenhouse was ascertained. The total damage to the plaintiff's plants from the gas was $600. The break in the pipe occurred before the sale to Aldrich, and

more or less damage was done to the more sensitive plants before that time. This damage is assessed at $100, leaving the amount of the direct injury after the sale to Aldrich at $500.

After discovering the gas, the plaintiff attempted to save himself by more ventilation, which necessitated burning more coal. The cost of extra coal burned, $13, is allowed as an additional item of damage. The plaintiff also claimed special damage to his business, resulting from the fact that plants sold by him, which were thought to be unaffected, proved to be weakened by the exposure to gas and did not grow as they otherwise would, and that thereby his business reputation was injured. On this ground $250 is allowed.

The defendants claimed they were liable only for damage resulting after notice to them and an opportunity to remove the nuisance. There was no evidence that any of the defendants' officers or incorporators had knowledge of the negligent construction which caused the break, or any reason to suppose such break existed or that gas was escaping, until notified on March 22. The damages subsequently accruing were $250. Unless chargeable with the original defective construction, or bound in commencing the operation of the works to know that the pipes were whole or properly laid, the defendants were guilty of no negligence until after notice.

As to the $250 allowed for damage to business reputation, the defendants claim that the plaintiff ought to have stated to purchasers that the plants might possibly be affected, that he would not then have suffered such damage, and that as to this item the plaintiff was therefore guilty of contributory negligence. On this question it is found that the plaintiff sold the plants in good faith, reasonably supposing them sound, and that he was not guilty of contributory negligence.

*Jewell & Owen,* for the plaintiff.

*E. A. & C. B. Hibbard,* for the defendants.

BLODGETT, J. The defendants' contention that until notice to them there was no liability on their part for damage to the plaintiff's plants from gas escaping from a leaky pipe and penetrating and pervading his greenhouses, cannot be sustained as a matter of law. It was the use of the pipe for the transmission and distribution of gas, and not the pipe itself, that constituted the nuisance. For the mere maintenance of the pipe as such,— it having been laid before the acquisition of the defendants' title and not being a nuisance *per se,*— they might not be liable without notice ; but when they acquired title to the pipe they immediately became chargeable, as its owners and users, with the personal duty or

obligation cast upon them by the law to keep it in a reasonably safe condition and so use it as not unnecessarily to injure the property or endanger the safety of the plaintiff or others, and if they failed to do so, the law properly renders them liable for the consequences in the same manner and to the same extent as if they had laid the pipe themselves. *Monroe* v. *Lumber Co.*, 68 N. H. 89; *Coupland* v. *Hardingham*, 3 Camp. 398; *Gray* v. *Gas Light Co.*, 114 Mass. 149, 153; *Churchill* v. *Holt*, 127 Mass. 165; *Jones* v. *Williams*, 11 M. & W. 176; *Irvine* v. *Wood*, 51 N. Y. 224; *Joyce* v. *Martin*, 15 R. I. 558; *Beavers* v. *Trimmer*, 25 N. J. Law 97; Cool. Torts 612; Wood Nuis., *s.* 268; 16 Am. & Eng. Enc. Law 990, 991.

Nor can the defendants protect themselves from liability for injury to the plaintiff's plants until after notice, merely on the ground that they did not in fact know the pipe was defective or that gas was escaping from it into his greenhouses. They were bound to guard against both of these things by exercising the proper care required under the circumstances; and unless they did exercise such care, they are responsible for any resulting injury, irrespective of notice. In other words, the question of the defendants' liability is not dependent upon their knowledge of the pipe's defective condition or the escaping gas, but upon the observance or neglect of care by them (*Monroe* v. *Lumber Co.*, *supra*; *Garland* v. *Towne*, 55 N. H. 55, 57; Cool. Torts 570); and as it is found that "there was no evidence that any of the defendants' officers or incorporators had knowledge of the negligent construction which caused the break, or any reason to suppose that such break existed or that gas was escaping, until March 22," and that "unless chargeable with the original defective construction, or bound in commencing the operation of the works to know that the pipes were whole or properly laid, the defendants were guilty of no negligence until after notice," these findings must be regarded as settling their liability in respect of care up to that time, and the plaintiff's recovery must be restricted accordingly to the damage subsequently accruing.

The special damages claimed and allowed for the injury to the plaintiff's business reputation, on account of his sales of damaged plants, were not properly recoverable and must be disallowed as too remote.

There are cases, undoubtedly, where the tort complained of is of such a nature that the law will not nicely attempt to limit the amount of reparation, but will extend the line of relief so as to embrace all the consequences of the wrongdoer's conduct, although quite remote from the original transaction; but as a general rule, it may be said that in cases of tort without special aggravation, where the conduct of the defendant cannot be

considered so morally wrong or grossly negligent as to give a right to exemplary or vindictive damages, the extent of the plaintiff's remuneration is restricted to such damages as are the legal and natural consequences of the defendant's wrongful act. 1 Sedg. Dam. (7th ed.) 144, and authorities cited. This rule has been recognized in a multitude of cases; and when applied to the present case, it renders the injury to the plaintiff's reputation far too remote for legitimate compensation. The full damage to the plaintiff's plants was a proper matter for inquiry, but the consequence to his reputation resulting from a sale of the plants to his customers, "reasonably supposing them sound," was obviously beyond the range of such inquiry, and conjectural merely. It was altogether too shadowy and indirect for legal consideration, and must be regarded as an unexpected, unnatural, and accidental consequence of the defendants' wrong.

The result is, that the plaintiff is entitled to recover the damage to his plants after notice to the defendants of the escaping gas and subsequent to the time when by the exercise of due care they could have discovered and repaired the defective pipe, and also the value of the extra coal burned by him as found by the trial justice, amounting together to the sum of $263.

*Judgment accordingly.*

PARSONS, J., did not sit: the others concurred.