ARMOUR v. WANAMAKER (two cases).

(Circuit Court of Appeals, Third Circuit. February 1, 1913.)

Nos. 1,664 and 1,665.

1. EXPLOSIVES (§ 9*)—VIOLATION OF STATUTORY DUTY—EVIDENCE.

Where plaintiff's wife died as the result of burns caused by the explosion of a bottle of hair tonic, which, though containing from 60 per cent. to 80 per cent. alcohol, was misbranded in violation of Food and Drug Act June 30, 1906, c. 3915, § 8, 34 Stat. 771 (U. S. Comp. St. Supp. 1911, p. 1357), and, being misbranded, had also been introduced by defendant into interstate commerce in violation of section 2 thereof, defendant's omission to properly brand, and the introduction of the package into interstate commerce in violation of the act, afforded competent evidence for submission to the jury of the question of negligence, under the rule that the omission to fulfil a statutory imposed obligation creates statutory negligence.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. § 6; Dec. Dig. § 9.*]

2. EXPLOSIVES (§ 9*)—PROXIMATE CAUSE—STATUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for death resulting from the explosion of a glass bottle containing hair tonic, which, though containing 60 per cent. to 80 per cent. alcohol, was misbranded, in violation of Food and Drug Act June 30, 1906, c. 3915, § 8, 34 Stat. 771 (U. S. Comp. St. Supp. 1911, p. 1357), as containing "extract from herbs, roots and flowers," whether such misbranding, and defendant's further negligent act in introducing the tonic as misbranded into interstate commerce in violation of section 2, was the proximate cause of the explosion and decedent's resulting death, held for the jury.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. § 6; Dec. Dig. § 9.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

Actions by John Armour, as administrator of the estate of Mira J. Armour, deceased, and by John Armour in his own behalf, against John Wanamaker. Judgment for defendant, and plaintiff brings error in each case. Reversed, and venire de novo awarded.

Charles L. Smyth and Duane, Morris & Heckscher, all of Philadelphia, Pa., for plaintiff in error.

Wm. L. Nevin and W. W. Smithers, both of Philadelphia, Pa., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and RELLSTAB, District Judge.

BUFFINGTON, Circuit Judge. In the court below, John Armour in his own right in one case, and John Armour, as administrator of Mira J. Armour, his wife, in a second, all of whom were citizens of New Jersey, brought actions of trespass against John Wanamaker, a citizen of Pennsylvania, to recover damages for alleged negligence causing the death of said Mira J. Armour. The court having directed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a verdict for defendant, the plaintiffs, on entry of judgment thereon, sued out these writs. The sole question involved is whether, under the plaintiffs' proofs, the cases should have been submitted to the jury.

[1] The proofs on behalf of the plaintiffs, which was the only testimony in the cases, tended to show that Mrs. Armour, the decedent, a few days before her death, bought in defendant's store in Philadelphia, hair tonic contained in a bottle closed with a tight, ground glass stopper. The bottle was labeled as being an "Extract from Herbs, Roots and Flowers," but in reality about 60 per cent. to 80 per cent. of it was alcohol. Under the legislative definition of section 8 of the federal Food and Drug Act of 1906, this bottle was misbranded, in that said section provides that there is a misbranding, "in case of drugs, * * * if the package fail to bear a statement of the quantity or proportion of any alcohol * * * contained therein." The proofs also tended to show that, in further contravention of the provisions of section 2 of said act, which provides "that the introduction into any state * * * from any other state * * * of any * * * drugs, * * * which is misbranded, is hereby prohibited," the defendant delivered said misbranded bottle to the purchaser's home in New Jersey. The omission of the defendant to properly brand, as required by statute, this bottle as containing alcohol, and the introduction of the package into an interstate commerce prohibited by the act, clearly afforded competent evidence for submission to a jury on the question of defendant's negligence. The principle is clear that the omission to fulfill a statutory imposed obligation creates statutory negligence. 1 Shearman & Redfield's Negligence, § 13.

[2] There then being evidence on which the question of the defendant's negligence could be submitted to the jury, the next question arises: Was there evidence from which a jury could find that this statutory negligence injured the deceased? In that respect there was proof tending to show that, on the Sunday following the receipt of the bottle, Mrs. Armour, while in her bedroom, attempted without success to remove the stopper from the bottle. She then went to the kitchen and told the cook she could not draw the stopper. The cook's version was that Mrs. Armour—

"sat down and tried to open it, and she couldn't open it, and then I tried to open it for her. I asked her to let me open it, and she handed it to me, and I couldn't open it. * * * I tried to get it out, and I couldn't, and then I gave it to her again, and told her that probably Mr. Armour could get it out for her, and she says, 'No; I can get it out.' She says, 'You get the basin and pour some warm water in,' and she says. 'I will place the end of the bottle in, and then I can get it out easily,' and I did so, and then she went over to the range and placed the neck of the bottle in and lifted it out, and as she did it burst, and as it burst it caught, and the noise when it caught was the sound of a gun, and it was all over in flames; the whole kitchen was in flames. * * * It [the water] was not so very hot, because I placed my finger in it and asked her if it was hot enough, and she said, 'Yes; it is warm enough.'"

The basin was put on the back of the range. The lids were on, and no flame was exposed. The testimony of the chemist who analyzed another bottle of the tonic was that alcohol vapor was not explosive, that when mixed with air it was inflammable, that being heavier than

air it would drop and ignite instantly on touching a heated stove. He further said:

"I think it is obvious from the testimony of the witnesses that the bottle broke, letting out the contents with explosive violence, and so much so that the alcohol was scattered over the room. That requires an adequate cause. Such a cause would only be found from the internal pressure exercised from the alcohol vapor in that bottle. That in turn requires that that alcohol must have been heated in order to generate that pressure. * * * I found in that bottle as it is there would be some pressure at ordinary summer temperature."

He further testified that a temperature of from 105° to 125° was sufficient to produce an explosion of the tonic, due to unequal strains upon the shoulder of the bottle and the ground glass stopper. His conclusion, in substance, was that the escape of the fluid was caused by internal pressure, accompanied by the expansion of the neck of the bottle and the weakening of the shoulder, "by this expansion of the neck of the bottle by the application of heat causing the weakening of the bottle along certain lines, this internal pressure making it veritably an alcoholic bomb, blowing it in every direction," adding that it was perfectly patent to any mind that dwells upon it that some of the alcohol in liquid form or the fumes got down to the surface of the range, into the space where the ring was and the lid, and came in contact with the fire and became ignited.

Under such proofs, would a trial judge err in allowing a jury to infer that defendant's statutory negligence caused Mrs. Armour's death? Possibly no simpler and clearer statement of the law bearing on this case can be found than that given by the Supreme Court of Pennsylvania in Morrison v. Davis, 20 Pa. 171, 57 Am. Dec. 695:

"The general rule is that a man is answerable for the consequences of a fault only so far as the same are natural and proximate, and as may, on this account, be foreseen by ordinary forecast, and not for those which arise from a combination of his fault with other circumstances that are of an extraordinary nature."

It will be observed that one negligent is charged with responsibility, not only for such consequences as he foresees by ordinary forecast, but, if the negligent act is one which naturally might result in injury, it is not necessary that the doer of such act should have in mind all the particular results which might happen therefrom. City of Dixon v. Scott, 181 Ill. 116, 54 N. E. 897; Memphis v. Creighton, 183 Fed. 552, 106 C. C. A. 98; Pulaski v. McClintock, 97 Ark. 576, 134 S. W. 1189, 32 L. R. A. (N. S.) 825. So in Foster v. Railway Co., 127 Iowa, 84, 102 N. W. 422, 4 Ann. Cas. 150, it is said:

"Doubtless the particular situation might not have been foreseen, but this was not essential to making out a charge of negligence. Accidents as they occur are seldom foreshadowed; otherwise, many would be avoided."

In Baltimore v. Slaughter, 167 Ind. 330, 79 N. E. 186, 7 L. R. A. (N. S.) 597, 119 Am. St. Rep. 503:

"To entitle one to a trial of the question of another's negligence, which resulted in injury, it is not necessary that the effect of the act or omission complained of in all cases, or even ordinarily, be to produce the consequences which followed; but it is sufficient if it is reasonably to be apprehended that

such an injury might thereby occur to another while exercising his legal right in an ordinarily careful manner."

And in Burk v. Creamery Co., 126 Iowa, 730, 102 N. W. 793, 106 Am. St. Rep. 377:

"The test, after all, is: Would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in injury to some one? The particular result need not be such as that it should have been foreseen."

For if a man actually foresaw an injury to another, and adopted such a course as subjected him to that injury, he would be guilty of a malicious wrong; but a malicious wrong is not necessary to constitute negligence. Indifference, disregard, the omission of considerate regard for the consequences of an act, may amount to negligence; for negligence may be an act of thoughtless omission, as well as one of willful commission. Pittsburgh v. Grier, 22 Pa. 54, 60 Am. Dec. 65.

Applying these principles to the undisputed facts in hand, it is clear that men of reasonable mind might from these facts draw different inferences on the question whether the statutory negligence of the defendant was or was not the direct and efficient cause of the injury to plaintiff's decedent. In view of a retrial being necessary, we refrain from a present discussion of the facts, and limit ourselves to stating our conclusion, which is that the case was one to be submitted to a jury.

The judgments below are reversed, with a venire.