## BROWN v. KANSAS NATURAL GAS CO.

(Circuit Court of Appeals, Eighth Circuit. May 10, 1924.)

No. 6433.

1. **Gas ⊛═20(4)—Negligence in not discovering leaks in pipe held for jury.**

In action for injuries by explosion, which occurred when lighted match was thrown in a hole dug near defendant gas company's main, question whether defendant was negligent because of failure to discover that its pipe was corroded and rusted, and that gas was liable to escape therefrom, *held* for jury.

2. **Negligence ⊛═15—Both wrongdoers liable.**

Where negligence of two persons co-operates to produce an injury, both are liable, and inquiry as to proximate cause is not pertinent.

3. **Trial ⊛═178—Evidence viewed favorably to plaintiff on motion to direct verdict for defendant.**

On motion to direct verdict for defendant, evidence will be viewed most favorably to plaintiff, and court cannot weigh the evidence.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action by Norman Brown, a minor, by his next friend, Mary Brown, against the Kansas Natural Gas Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Harry G. Kyle, of Kansas City, Mo., for plaintiff in error.

Leslie J. Lyons, of Kansas City, Mo. (H. O. Caster and Warren T. Spies, both of Bartlesville, Okl., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

SYMES, District Judge. The Kansas Natural Gas Company, defendant here and below, conveys natural gas through a high-pressure main from certain wells in Oklahoma and Kansas to Kansas City, Mo. At a point on Twenty-Fifth street, just inside the city limits, it delivers it to the Kansas City Gas Company, by whom the gas is distributed throughout the city at a somewhat lower pressure. The defendant's main runs in an east and west direction along the south side of Twenty-Fifth street, within a few feet of the curb, 3 feet underground, to a point where it turns southeast under the sidewalk space, and enters the private property of the Kansas City Company. Twenty-Fifth street was paved, but the sidewalk space was not, and consisted of filled in dirt. The soil at the point in question is described as loose and mealy. This pipe had been in the ground for 16 or 17 years prior to the accident.

On the 16th of September, 1921, employees of a local light and power company dug a row of post holes along the south side of said Twenty-Fifth street, adjacent to the curbing. One of these holes was located within 2½ feet of this gas main, and was left open. Ten days later, on September 26, 1921, the plaintiff, Norman Brown, with other boys, in passing by was attracted by the hole, and, having knelt down, was peering into it, when one of his companions threw a lighted match into the hole. An explosion immediately resulted, causing injuries to young Brown, for which damages are here sought. The explosion was caused by gas which had accumulated in the hole.

At the time the post holes in question were dug the workmen complained of a very strong odor of gas, and wanted to stop work. This gas was found oozing through the loose soil. No report of the same was made to the gas company, and it is not claimed that they had any actual notice of a leak or defect in the pipe. After the accident the hole was further explored, and the gas main uncovered. It showed clear evidence of corrosion and rust. Two small holes were discovered, a little smaller than the size of a lead pencil, 6 inches apart. The gas whistled as it escaped.

The foreman of the local gas company, who made the investigation, testified that in his opinion the hole had been there for some weeks, and possibly some months, and maybe longer. He next put down a few bar holes close to the curb. These bars were 4 or 5 feet long, and the pressure of the gas blew the dust and dirt up through them, and he further stated he could easily hear the gas whistle 2 or 3 feet away. Another disinterested expert testified that a pipe of this character, after being underground for 14 or 15 years, would suffer greatly from erosion and rust, unless covered in some way with asphalt or other material; that after corrosion once starts it goes on very rapidly, eats pin holes in the pipe, and the pressure of the gas tends to enlarge a hole once started.

There is no evidence that the defendant maintained any system of inspection, though the subject is touched upon. It appears that the most approved method of inspecting a high-pressure pipe line, such as this, is by what is known as pipe walkers; that is, men who walk the line. They detect escaping gas either by sound, smell, or certain well-known effects it has upon the surrounding vegetation. The local company had uncovered its pipes adjacent to those of defendant about a year before, and found it necessary to make some repairs. At the end of the plaintiff's case the defendant requested the court to instruct the jury to return a verdict in its favor, and the motion was granted and judgment entered accordingly. The correctness of this ruling is the only question before us.

The authorities seem to hold that gas is a dangerous instrumentality, and a public gas company is bound to exercise such a degree of care in the conduct of its business as is reasonably necessary to avoid injury to the life and property of the public, and if it fails in this respect and injures the person or property of another it will, in the absence of contributory negligence on the part of the person injured, be liable for damages, even though this degree of care may extend the requirements

beyond the general rule with respect to ordinary care. Pulaski Gaslight Co. v. McClintock, 97 Ark. 576, 134 S. W. 1189, 1199, 32 L. R. A. (N. S.) 825; Triple State Natural Gas Co. v. Wellman, 114 Ky. 79, 70 S. W. 49, 1 Ann. Cas. 64; Sipple v. Laclede Gaslight Co., 125 Mo. App. 81, 102 S. W. 608; Greaney v. Holyoke W. P. Co., 174 Mass. 437, 54 N. E. 880; Hartman v. Citizens' Nat. Bank, 210 Pa. 19, 59 Atl. 315; Manning, Adm'x, v. St. Paul Gaslight Co., 129 Minn. 55, 151 N W. 423, L. R. A. 1915E, 1022, Ann. Cas. 1916E, 276; 12 R. C. L. 905.

It is apparent on this record that the escape of gas at the point in question would have been disclosed, if any of the ordinary and known tests used to determine such a fact had been employed within the period of 10 days prior to the accident. When we consider that the accident occurred inside the city limits, the high pressure the gas was under, the character of the soil, the length of time the pipe had been in the ground and the necessary results thereof in the way of deterioration, etc., the length of time gas had been present in this post hole without discovery by the defendant, and the attraction such a hole has for children, we are forced to the conclusion, in the absence of any testimony from the defendant, that a verdict by a jury finding the defendant negligent on one or more of the specific charges of negligence set forth in the complaint, could not have been properly set aside. In Koelsch v. Philadelpia Co., 152 Pa. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. Rep. 653, in holding a gas company liable on a similar state of facts, it was held:

"In an action to recover damages for injuries to a house caused by an explosion of natural gas, evidence for plaintiff tended to show that on the day after the explosion defendant uncovered its main pipe in the street near the house; that, before it was fully uncovered, but after the digging had commenced, gas was seen to escape from the trench; that when the pipe was reached, about 36 feet from the house, two or more holes or cracks were found in it, one of them having the appearance of being rusted or worn out, through which the gas poured in dense volumes; and that the street between the leak and the house was made ground, filled with shale and broken stone, so porous that gas could pass through it. *Held* that, in the absence of any evidence that the gas could have reached the house from any other source, there was sufficient evidence to justify the jury in finding that the gas which had exploded had escaped from defendant's main."

See, also, Carmody v. Boston Gaslight Co., 162 Mass. 539, 39 N. E. 184.

In Sipple v. Laclede Gaslight Co., 125 Mo. App. 81, 90, 102 S. W. 608, 611, on the question of whether or not a prima facie case has been made out it is said:

"In the absence of an intervening agency appearing, which negatives the idea of negligence on the part of the gas company, that prima facie proof is made on the question of negligence by showing the break or leak in the main and consequent escape of gas which operated proximately to cause the loss. Such proof is sufficient to sustain the inference of negligence by the jury"— citing many authorities. "The true rule is that a jury may find negligence from those circumstances [breaking of pipe and escape of gas], but it is for them to say whether they will do so; and if there are other circumstances bearing on the question, they must weigh them all"—citing Carmody v. Boston Gaslight Co., supra.

In Taylor v. Gas Co., 185 Mo. App. 537, 172 S. W. 624, damages were recovered for injuries to ornamental trees as a result of escaping gas, and the refusal of the court to instruct a verdict was sustained. The court says that the rule that applies to gas companies—

"requires, not only a careful laying of sound pipes, but also requires an efficient system of inspection, oversight, and superintendence. The company must use due and reasonable care in the inspection of its pipes, and must repair defects in the same, whether caused by its own fault or not. * * * If leaks or defects in the company's pipes occur because of faulty construction, or otherwise through the company's fault, it is liable without notice for any resulting injury to person or property."

[1] Defendant argues in effect that, as its pipe had been in the ground for 17 years without leaking, it had the right to assume that it would so continue until actual notice of deterioration or leak was brought to its attention. We cannot subscribe to any such doctrine. On the contrary, the evidence made it, after the lapse of such a time, an issue of fact whether defendant was negligent if it failed to discover that its pipe was corroded and rusted, and liable to such leaks as were actually disclosed by the tests made after the accident. Dow v. Winnipesaukee G. Co., 69 N. H. 312, 41 Atl. 288, 42 L. R. A. 569, 76 Am. St. Rep. 173; 28 C. J. 593.

[2] The next question requiring discussion is: Granting all the above alleged acts of negligence on the part of the defendant, yet they were not the proximate cause of the injury, because there were two direct and independent intervening causes that defendant was not responsible for, to wit, the digging of the post hole and the throwing of the lighted match into the hole by the plaintiff's companion, neither of which it is said the defendant could have forseen; and without which the accident would not have occurred. The rule in the federal court is, where the negligence of two persons co-operates to produce an injury, both are liable, and inquiry as to the proximate cause is not pertinent. Pac. Tel. & Tel. Co. v. Parmenter, 170 Fed. 140, 95 C. C. A. 382, and cases cited.

Memphis Consol. Gas & Electric Co. v. Creighton et al., 183 Fed. 552, 106 C. C. A. 98, was a case where gas was supplied to a house in the usual way, and a leak allowed gas to accumulate in the basement. The owner of the house, in searching for the leak with a lighted match, caused an explosion which injured the plaintiff, a tenant of the house. It was urged that, admitting the explosion and the injury to the plaintiff, it would not have occurred, but for the act of the owner in applying a lighted match to escaping gas, and therefore the proximate cause of the explosion was not the negligence of the defendant in failing to cut off the gas, but was an independent, intervening, and unexpected cause, which superseded any negligence on the part of the defendant, and that therefore there was no natural and continuous sequence of events, uninterruptedly connecting the breach of duty with the damage as cause and effect. The court, after stating that the defendant owed a duty to every one within the sphere of danger, stated that the act of the owner in bringing the lighted match into contact with the gas was not such a supervening cause as to render the first cause inoperative, and said:

"The truth of the matter is that the causes of the injury were concurrent. The accumulation of the gas was one; the lighted match was the other. The

effect of the former had not ceased, but co-operated with that of the other in effecting the injury. In such case an inquiry about the proximate cause is not pertinent, for both are liable. * * * If the thing done produces immediate danger of injury, it is not necessary that the author of it should have in mind all the particular results which might happen from the presence of the danger."

Armour v. Wanamaker, 202 Fed. 423, 425, 120 C. C. A. 529, cites the above case with approval, and adds this:

"It will be observed that one negligent is charged with responsibility, not only for such consequences as he forsees by ordinary forecast; but, if the negligent act is one which naturally might result in injury, it is not necessary that the doer of such act should have in mind all the particular results which might happen therefrom."

See, also, Koplan v. Boston Gaslight Co., 177 Mass. 15, 58 N. E. 183. The Supreme Court has said in Milwaukee & St. Paul Railway Company v. Kellogg, 94 U. S. 469, at page 476 (24 L. Ed. 256):

"In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

And at page 474 (24 L. Ed. 259) that:

"What is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it."

[3] Our view is strengthened, we think, if we bear in mind the rule that, on a motion to direct a verdict for defendant, the plaintiff is entitled to have taken in his behalf the most favorable view of the evidence, and that it is not within the province of the court to weigh the evidence. Hales v. Michigan Cent. R. Co., 118 C. C. A. 627, 200 Fed. 533; Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 20 C. C. A. 596, 74 Fed. 463.

It therefore follows that, considering the plaintiff's evidence and the inferences that might properly be drawn therefrom, a jury could have made a finding of negligence against the defendant, and it was for them to say whether they would or not.

The judgment below is reversed, and the case remanded for a new trial.