**GORDON v. PARKER.**

Civ. No. 7541.

United States District Court
D. Massachusetts.

Feb. 17, 1949.

See also 83 F.Supp. 40, 83 F.Supp. 45.

Willis A. Downs and John J. O'Neill, both of Boston, Mass., for plaintiff.

Allan Roy Kingston, of Somerville, Mass., for defendant.

WYZANSKI, District Judge.

In this case the jury's verdicts have found Mr. Parker is not liable for criminal conversation with Mrs. Gordon (Count 2) but is liable for alienating her affections from Mr. Gordon (Count 1). The question

44

is whether this Court ought to set aside the verdict on Count 1.

If the jury had been severely logical, there were, it seems to me, three differing views of the evidence which were equally plausible.

(1) Mr. Parker wrote suggestive letters to Mrs. Gordon, embraced her and kissed her but never had intercourse with her or enticed her to leave Mr. Gordon. A meddlesome aunt, Mrs. Hays, seeking to alienate the affections of Mr. Gordon for Mrs. Gordon, picked out of the furnace scraps of these letters and had her sister show them to Mr. Gordon. He, believing that there had been adultery, had reactions familiar to psychiatrists which quite possibly resulted in failure of intercourse between him and his wife. The combination of suspicion, injured pride and goading from meddlesome relatives led Mr. Gordon to bring a suit in Pennsylvania for divorce from his wife and a suit in this Court against Mr. Parker for criminal conversation and alienation of affections.

(2) Mr. Parker wrote suggestive letters to Mrs. Gordon, embraced her and kissed her but never had intercourse with her. Yet his conduct was with the purpose of disrupting the marriage relation and had the effect of inducing Mrs. Gordon to refuse sexual relations with Mr. Gordon on his return from India.

(3) Mr. Parker and Mrs. Gordon had sexual intercourse without Mr. Gordon's consent.

A wilful judge who detested actions of this type or who regarded the first of these three theories of the evidence as the one most likely to correspond with the truth might be tempted to set aside the jury's verdict for plaintiff on Count 1 and to grant a new trial, if not to enter judgment for defendant. But such strong measures do not appear appropriate if one is mindful of the limitations of judicial office. The Seventh Amendment to the United States Constitution and Federal Rules of Civil Procedure, rule 38, 28 U.S.C.A., preserve jury trial in this type of case. And there is much to be said for allowing twelve men selected at random from the community to exercise wide discretion in the form of verdicts they render on sexual conduct. If one approaches the verdicts in the case at bar in a mood sympathetic to juries, and if one regards the law not as a mere grant of power to a court but also as a restraint upon it, then these verdicts in my opinion can be and should be sustained.

It is indisputable that the twelve jurors rejected the first of what I have called the plausible views of the evidence. But it is not so clear as it may at first seem that the jury chose the second rather than the third view.

The argument for interpreting the jury's action as endorsing the second view would be that in connection with Count 2 the jury found Mr. Parker not liable for criminal conversation and therefore the jury in connection with Count 1 could not have found and did not believe that Mr. Parker had sexual intercourse with Mrs. Gordon. That argument would be logical and persuasive if a jury were required to render consistent verdicts on the different counts submitted to them. But a jury, unlike a judge, is permitted to be inconsistent. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161. "Whether the jury's verdict was the result of carelessness or compromise or a belief that the responsible individual should suffer the penalty * * * is immaterial. Juries may indulge in precisely such motives or vagaries." United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48. Quite possibly what happened in the case at bar is that some, if not all the jurors thought that Mr. Parker had had intercourse with Mrs. Gordon but that the blame was his. Indulging in semantics, the jurors may have preferred to stamp Mr. Parker's conduct not as "criminal conversation"—which might seem to the jurors to place the blame upon both parties—but as "alienation of affections"—which might seem to place the onus squarely on Mr. Parker. That is, the jurors may not have meant to say that Mr. Parker never went beyond patting, embracing and kissing Mrs. Gordon.

Of course, this possible interpretation of the jurors' minds is pure speculation. Neither that or any other retracing

of the jurors' mental processes—even if such retracing were based in part on questions put to the Court by the foreman after the jury retired—is permissible as a means of attacking a verdict. The only reason for even discussing this possible interpretation of the jury's verdicts is to support them and to underline the point that this Court cannot be certain whether the jury adopted the second or the third of the plausible views of the evidence. Since the jury may have adopted the third view, and since there plainly was some testimony from which the jury could have—though someone else might not have—inferred adultery, the verdict on Count 1 as well as the verdict on Count 2 must stand. Moreover, since the verdict on Count 1 may have rested on the jury's belief that there was adultery in Massachusetts, it is unnecessary to deal with the problem of tort law whether a defendant has "enticed" a wife when he has fondled her in a way which leads her to refuse to have sexual relations with her husband or to deal with the problem of conflict of laws whether, if a Massachusetts man by conduct in Massachusetts leads a Pennsylvania wife to refuse her husband sexual intercourse both in Pennsylvania and Massachusetts, the rule of law which governs liability is the rule of Pennsylvania or the rule of Massachusetts.