W. H. ELLIOTT & SONS CO., Inc.,
Plaintiff, Appellant,

v.

E. & F. KING & CO., Incorporated, et al.,
Defendants, Appellees.

E. & F. KING & CO., Incorporated,
Defendant, Appellant,

v.

W. H. ELLIOTT & SONS CO., Inc.,
Plaintiff, Appellee.

E. & F. KING & CO., Incorporated,
Cross-Claimant, Appellant,

v.

NUODEX PRODUCTS CO., Inc., Cross-
Defendant, Appellee.

NUODEX PRODUCTS CO., Inc., Cross-
Defendant, Appellant,

v.

E. & F. KING & CO., Incorporated,
Cross-Claimant, Appellee.

Nos. 5467–5470.

United States Court of Appeals
First Circuit.

Heard Oct. 5, 1961.

Decided April 27, 1961.

Petitions for Rehearing Denied May 24,
1961, in Nos. 5467, 5468.

See also 23 F.R.D. 303.

Stanley M. Brown, Manchester, N. H., with whom G. Marshall Abbey and Mc-

Lane, Carleton, Graf, Greene & Brown, Manchester, N. H., were on brief, for W. H. Elliott & Sons Co., Inc.

Robert W. Upton and John H. Sanders, Concord, N. H., with whom Upton, Sanders & Upton, Concord, N. H., was on brief, for E. & F. King & Co., Inc.

William S. Green, Manchester, N. H., with whom John J. Sheehan, Kimon S. Zachos and Sheehan, Phinney, Bass, Green & Bergevin, Manchester, N. H., were on brief, for Nuodex Products Co., Inc.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Nuodex Products Co., Inc., a New York corporation, manufactured a chemical compound known as Super Ad-It as an ingredient for paint to be used in locations such as greenhouses to keep the paint from mildewing. E. & F. King & Co., Inc., a Massachusetts corporation that manufactured greenhouse paint, introduced Super Ad-It into paint which it sold to W. H. Elliott & Sons Co., Inc., a New Hampshire corporation engaged in growing roses. Both Nuodex and King advertised the mildew-resistant character, and the stability, of their products. Elliott applied the paint to the inside of two greenhouses, where it prevented mildew well enough, but it also inhibited the normal development of the roses. Mercury, present in Super Ad-It in a combined form, is poisonous to roses. In the high temperatures of the greenhouse, the mercury compound broke down and, as a result, the paint emitted mercury vapors which then precipitated on the rose plants. Elliott sued King and Nuodex in the United States District Court for the District of New Hampshire in two counts, for negligence and breach of warranty, but subsequently withdrew its warranty claim against Nuodex, seemingly because New Hampshire law does not recognize a warranty between remote parties. King cross-claimed against Nuodex for negligence and breach of warranty. The cases were

tried together to a jury, which returned verdicts on each count. Out of this relatively common situation has arisen a snarl of sizable proportions.

The first difficulty stems from the fact that the jury, in finding for King against Nuodex on both counts, awarded substantially smaller damages than it did in its finding for Elliott against King on both counts. Since King's demonstrable damages were no less [1] than the loss suffered as a result of the successful prosecution of Elliott's claim against it, this is inconsistency number one. Next, the court permitted a verdict for Nuodex to stand in Elliott's suit against it, while permitting Elliott to recover against King, and King to recover over against Nuodex. A verdict for Elliott against King, at least on the negligence count, required a finding that Elliott was free of contributory negligence. A verdict for King against Nuodex required that Nuodex be guilty of negligence. But if Nuodex was negligent as against King, it is difficult to understand why it was not negligent as against Elliott, the actual and anticipated consumer of the product, and, if Elliott was free of negligence, why Nuodex should not be liable to Elliott as well as to King.

While the parties have made various attempts to discount or explain away these apparent inconsistencies, their alternative attempt is to obtain their resolution. Naturally, in this regard they offer different solutions, but essentially each endeavors to save certain verdicts and resolve the inconsistencies by amending the other judgments to conform thereto. But before we can consider such lengthening of the bed to fit the man, or shortening the man to fit the bed, we must determine whether any one of these verdicts, entirely apart from inconsistencies with another, is subject to direct attack. We start with the finding of $145,500 in favor of Elliott in its suit against King.[2]

The effect of the mercury poisoning was to damage, but not kill, many plants, particularly those known as Better Times. This resulted first in a substantial decline in the number of merchantable roses produced, and allegedly for a long time thereafter in the growth of roses of inferior color and with stems which were shorter or weaker, all important market considerations. From the beginning Elliott was faced with the problem of whether to replace the damaged plants entirely, and when to do so. It could not be predicted with certainty whether, on the one hand, a damaged plant would recover, or, on the other, for how long the paint would continue to be noxious so that no replacements could safely be made in any event. In this industry even undamaged plants are replaced with some frequency, every three to five years, normally four, and sometimes sooner if there is a change in the market. Elliott operates on a rotation basis. Hence the mercury damage struck plants of various ages, that is to say, demonstrably depreciated. Some plants Elliott concluded to replace early; many others, even though damaged, it did not replace until later when they had reached, or approached their normal retirement age.

Passing issues of whether Elliott was reasonable in its decisions (the defendants raise some question of whether it adequately mitigated damages), its loss fell into two principal categories. In the case of plants replaced before normal retirement, there was the cost of early replacement. Secondly, to the extent that damaged plants were not replaced, there was a loss of profits due to worthless and inferior production. Ample evidence was introduced on this latter score.[3] Elliott's

---

1. Conceivably they might have been more, because of incidental costs of defending the action brought against it by Elliott—a question we do not reach.

2. The award to King against Nuodex was $87,300, exactly 40 per cent less.

3. We do not pass on whether some of this evidence was objectionable, except to say that defendants' case of Dow v. Winnipesaukee Gas & Electric Co., 1898, 69 N.H. 312, 41 A. 288, 42 L.R.A. 569, is distinguishable. It is one thing to hold

approach to these dual channels of recovery was anything but niggardly. In presenting evidence of replacement costs, no adjustments were indicated for the attained ages of the plants. The reason for this was that Elliott recognized no obligation to make any deduction.[4] Nor did the court, which thereafter denied a perhaps not too carefully phrased instruction requested by King on this phase of Elliott's damage. In addition Elliott sought recovery for all loss of profits. It should be obvious that to award the full cost of replanting, without adjustment, on the assumption that the injured plants had been brand new, and on the further assumption that replacement had been made at once, and then to add damages for lost production over a period of years because the plants had not been replaced, involved duplication. Yet Elliott introduced, over objection, an exhibit showing the calculated cost of replacing immediately, without depreciation ($70,-523), having previously introduced one showing the original cost ($66,154). It then introduced the cost of all replacements when in fact made, again without adjustment ($73,772), and a further exhibit of loss of profits due to decrease of sales value of the product ($95,825). Incomprehensibly, it seemed to feel that much of this was a cumulative, rather than an alternative, way of showing loss.[5]

■■ In the face of Elliott's cumulation of damage evidence and theories, the court gave the jury no assistance whatever. We cannot imagine a charge more barren in a case so demanding of

particularization. In the absence of instructions, it is not to be assumed that damage evidence improperly before the jury will be disregarded, see Washington Gas Light Co. v. Lansden, 1899, 172 U.S. 534, 554, 19 S.Ct. 296, 43 L.Ed. 543, or that by happenstance the jury will reach the right result. The assessment of damages cannot be permitted to stand.

■ Recapitulating, for the purposes of the new trial, irrespective of the theory by which one approaches damages in this case, and excluding questions of the duty to mitigate by making reasonable decisions there are two central, well-defined elements to be considered— the shortening of the useful lives of the individual plants, and the diminution during their lives of their producing capacity, in quality or quantity. With respect to the latter, the measure of damages is the difference between the worth of what the injured plants actually produced until replaced by new producers, and the worth of what they normally could have been expected to produce up to that time. But with respect to the former, the recoverable amount is only the proportion of the value of the plants lost as a result of the premature termination of their lives. This would seem best measured by the cost of replacement depreciated according to the ages of the plants at the time of replacement. If, for instance, a particular plant was replaced, because of its injuries, for $4 in March 1956 when it had produced for three years, and it would normally have produced for four, the damage is $1.

speculative and remote, general damages to reputation resulting from the sale, at full prices, of plants which afterwards deteriorated because of defendant's having exposed them to poisonous gases. It is quite another to say that evidence of a grower's lower prices cannot be admitted because in part the prices may reflect reputation injury as well as actual damage to the blossom.

4. Elliott informed the court that there were "several factors. First, the damage to the plants themselves, *which is reflected in the replanting cost of the plants*. * * * We have the additional problem * * * of the continuing dam-

age to the growing crops through the next three years." (Italics supplied.)

5. Elliott's brief before us concludes this issue with this remarkable statement: "Thus the plaintiff's evidence actually received in these [four] Exhibits would justify a verdict of a least $220,000." Which one of the overlapping, or partially overlapping, evidences of loss Elliott was so generous as to omit from this compilation, we are not clear, but it is manifest that it was not generous enough. While the arguments of counsel are not in the record, we find nothing to suggest that it was any less inclusive in its claims below.

We are satisfied that apart from the damage issue the several verdicts, taken individually, are free from error. However, we will postpone decision as to whether the new trial should be on damages only until we have considered the verdicts in the light of their alleged inconsistencies. There is no doubt that we have discretion to grant a partial or complete new trial in each of the several actions depending on our view of what, in the circumstances, will be fair and just to the parties. See, e. g., Washington Gas Light Co. v. Lansden, supra, 172 U.S. at pages 555–556, 19 S.Ct. at page 304; Constitution Publishing Co. v. Dale, 5 Cir., 1947, 164 F.2d 210, 213.

■■ We consider first King's action against Nuodex. It was argued at length whether under Rule 49(b), F.R.Civ.P., 28 U.S.C., since King's claim against Nuodex is for the damages it must pay Elliott, it would be appropriate for the court to order judgment for King against Nuodex in an increased amount, to correspond with the amount awarded Elliott against King. However, the damage award against King has now been set aside, so that we now have no assessment to order Nuodex to respond to. It is nevertheless appropriate to consider the reason the jury originally differed in its two verdicts. As already stated, we can think of no proper reason for this disparity in Nuodex's favor, but it so happens that the jury's reason appears of record. When the jury returned, the foreman had failed to fill out a sufficient number of forms. A conversation ensued between him and the court in which the foreman asked for assistance. A verdict had been completed for a recovery of $145,500 by Elliott against King, but none with respect to King's claim against Nuodex. The foreman having indicated that the jury wished to find for King, the court asked him whether that verdict was to be the same amount. The foreman replied that it was to be "40 per cent." Thereupon a verdict was returned for $87,300, which is 60 per cent, not 40 per cent, of $145,500. Either the foreman misspoke himself, or, more likely he said "40 per cent less," and the reporter missed the last word. In either event, as a matter of rough justice one can see the jury's thinking. If Nuodex was negligent, it was nevertheless arguable that King was contributorily negligent; thus both should be held for their fair share of the total loss suffered by Elliott.[6] This seems to us not only the best, but the only, explanation for the discrepancy. It was, in other words, a deliberate compromise.[7] Under these circumstances no part of that verdict may be permitted to stand. There must be an entire new trial. See Mutual Ben. Health & Accident Ass'n v. Thomas, 8 Cir., 1941, 123 F. 2d 353, 356; 6 Moore, Federal Practice 3794 (2d ed. 1953). But cf. United States v. Dotterweich, 1943, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48. Conceivably, had the jury understood its duty to award King its full damages or nothing, it would have awarded nothing.

Next we consider the jury's verdict that Nuodex was not liable to Elliott. Nuodex claims that, even assuming an inconsistency between this finding and the

---

6. We do not here consider when, under New Hampshire law, a plaintiff found liable because of his negligence to a third person is not barred from recovery over against a defendant negligent to the plaintiff. See Derry Elec. Co. v. New England Telephone & Telegraph Co., 1 Cir., 1929, 31 F.2d 51; Boston & Maine R.R. v. Brackett, 1902, 71 N.H. 494, 53 A. 304. But cf. Nashua Iron & Steel Co. v. Worcester & N. R.R., 1882, 62 N.H. 159. See also Boston Woven Hose & Rubber Co. v. Kendall, 1901, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781.

7. The full extent to which conversations between the court and the jury may be permitted to affect substantive rights need not be determined. See United States v. Pleva, 2 Cir., 1933, 66 F.2d 529, 531–33. But cf. Gordon v. Parker, D.C.D.Mass.1949, 83 F.Supp. 43, 45, affirmed, 1 Cir., 1949, 178 F.2d 888. We believe it an appropriate matter to consider at least when an inconsistency, such as the discrepancy here in the awards of damages, appears on the face of the record quite apart from any such conversation, and the only action taken is to order a new trial.

findings that King was liable to Elliott and Nuodex liable to King,[8] there may be inconsistent verdicts in different actions. We need not rule on this question.[9] Elliott argues that this prima facie illogical course adopted by the jury burgeoned from its desire to apportion the loss between Nuodex and King. The jury might have feared that, if it found for Elliott against Nuodex, Elliott might collect from that defendant rather than from King, thereby frustrating the plan of apportionment. It may have sought to circumvent this possibility by finding for Elliott against King only, while permitting King to recover over in part. If this was the only reason the jury failed to find for Elliott against Nuodex, and it was an incorrect one, Elliott argues we should now order final judgment for Elliott against Nuodex on the issue of liability. We need not pursue logic to such limits. But, particularly since we have been given no other adequate explanation for the seeming inconsistency, we find Elliott's argument persuasive to the extent of requiring us to set aside the verdict in Nuodex's favor and order a new trial. In this trial the jury should be instructed on damages in accordance with this opinion.

This leaves the question of the findings of liability in Elliott's action against King. Nothing that has been said here, or in argument, convinces us of any error in these findings. In this case there should be a new trial on damages only.

■ We shall not pass further on the other questions raised which might or might not arise again, but there is one we must consider. Elliott claimed that it was entitled to interest from the date of the writ, pursuant to New Hampshire R.S.A. 524:1-b.[10] The writ in this case was dated October 25, 1954. Since it was claimed that the paint continued to release mercury vapor after that date, and since no replacement costs and but little of the eventual loss of profits had yet been incurred, it is clear that Elliott's claim as of the date of suit was principally composed of losses not yet materialized. For the jury to make an award which included the entire loss of profits in 1957, for example, and for interest then to be added from the date of the writ, would involve another duplication. This is not to say that the statute is not applicable. Rather, the statute recognizes the familiar principle that in legal theory damages are due as of the date of the writ, see Pepin v. Beaulieu, 1959, 102 N.H. 84, 90, 151 A.2d 230, even though ascertainment of the amount may be facilitated by subsequent events. Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 1952, 194 F.2d 846, 856, certiorari denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348. The statute should have been followed. But to avoid duplication the jury should be informed of its existence by the court and instructed that, in considering losses realized subsequent to the date of the writ, the amount determined should be appropriately discounted so that the verdict will properly reflect the value of the plaintiff's claim as of October 1954.

The costs were properly taxed below.

Judgment will be entered vacating the judgments of the District Court, and re-

---

8. Nuodex also claimed that there was no inconsistency at all. Without finally resolving this question, we can say that the appearance of an inconsistency is marked and Nuodex's attempted explanation highly unlikely.

9. The law governing the effect of inconsistent verdicts in what might be regarded as separate actions is far from clear. However, we do not understand the cases to hold that such inconsistencies may not be taken into account in deciding to order a new trial. See Stephenson v. Stein-

hauer, 8 Cir., 1951, 188 F.2d 432, 436; Lansburgh & Bros. v. Clark, 1942, 75 U.S.App.D.C. 339, 127 F.2d 331; cf. Flusk v. Erie R. R., D.C.D.N.J.1953, 110 F.Supp. 118. See also Parker v. Gordon, 1 Cir., 1949, 178 F.2d 888, 895.

10. "In any action in which a verdict is rendered * * * for pecuniary damages * * * for damage to property, there shall be added by the clerk of court to the amount of damages interest thereon from the date of the writ * * *."

manding the actions to that court for further proceedings not inconsistent herewith. No costs on these appeals.

### On Petitions for Rehearing of Nos. 5467, 5468.

Plaintiff has filed a petition for rehearing addressed to a number of matters. Initially, we wish to note our disapproval of the tone of its brief. Plaintiff refers to a statement in its original brief which we described as remarkable (note 5). We pass over its response that, in its opinion, the statement is remarkable only in being inaccurate and inadequate, but we must register objection to the assertion that we made use of this statement knowing that plaintiff had not meant it. Nor do we propose to establish a principle that an entire argument, as distinguished from some obviously misstruck or misspoken word, is to be treated as unintended simply because we find it demonstrably unreasonable. We object, also, to the characterization of our opinion as "testy," and to the statement that plaintiff is making its suggestions "with restraint." There may be a fine line between arguing error and making comment, but we believe it easily observable even by disappointed counsel.

Plaintiff alleges that our reference to possible additional damages recoverable by King from Nuodex because of its having to defend plaintiff's action (note 1), will lead to confusion on retrial. According to King's original brief, the court had ordered that issue to be tried separately. We wonder how a cautionary note, inserted to avoid the appearance of having prejudged an issue on the merits, could be thought to have reversed the court's order on the procedure to be followed. We certainly did not so intend it.

Plaintiff reads our opinion as suggesting that we felt the jury's award was excessive. We made no such suggestion. Plaintiff had made the argument, which it repeats in its present brief, that there was no prejudicial error because there were proper ways by which a verdict of that size could have been returned. We said that this was no answer because it could not be assumed that the jury chose the right way when a wrong way was left open to it. By this we intended no comment as to what size a verdict could properly be.

Plaintiff points out that it would lose the advantages of operating on a system of rotating, or staggered, replacements if all damaged plants had to be replaced at once. It says that apparently we gave no thought to this element of damages. We did consider it, but did not discuss it because plaintiff did not, in fact, replace all of its plants at once. If our opinion might be thought to deny the proper force of such a claim, we wish to remove that impression. But this is not to say that such loss must automatically cancel out all obsolescence and all necessity of depreciating values. Nor is the potential effect of such a loss to be given full recognition when in fact all replacements were not, and according to plaintiff could not be, made at once. If plaintiff suffered any damage from rotation loss, this may be separately shown.

It is quite true, as plaintiff now says, that we did not review the propriety of all of the evidence it offered to establish its claim of diminished profits. It is frequently difficult to decide how many evidentiary questions to rule upon in anticipation of a new trial. For one thing, it often cannot be predicted whether the question will arise again in the same way. But, since plaintiff brings the matter up, we will say that one of the factors influencing us negatively in this case was that plaintiff did not see fit to brief these evidentiary questions. It largely contented itself with a letter to the clerk, which it asked to be shown to us, stating that the record appendix sufficiently set forth its position and that counsel was busy on other commitments. Plaintiff did refer to the subject in oral argument, but not in the detailed fashion which

would have facilitated our undertaking, or given us confidence that everything essential had been called to our attention. The consolidated record in these cases is 2,861 pages long, and the evidentiary questions plaintiff now speaks of are widely sprinkled. We find, for example, a discussion beginning "Now, as I say, there is a case in Illinois \* \* \*" with the name and citation of the case finally appearing 98 pages later. This court, too, has other commitments.

The two cases cited in plaintiff's present brief, United States Smelting Co. v. Sisam, 8 Cir., 1911, 191 F. 293, 37 L.R.A., N.S., 976, and Maton Bros., Inc. v. Central Illinois Public Service Co., 1934, 356 Ill. 584, 191 N.E. 321, appear to us to be consistent with our opinion dealing with the determination of plaintiff's damages. As to the admissibility of each piece of evidence, however, we will await the ruling of the district court in the light of the record as it develops on the new trial.

■ King, also, asks for rehearing. It bases its request on our having set aside the finding that Nuodex was liable to it. We observed that the damage apportionment between King and Nuodex was part of a compromise, and that the jury might not have found Nuodex liable had it been required to charge it with full damages. King argues that by a parity of reasoning it could be said that the jury might not have found King liable to Elliott if part of the damages could not have been passed on to Nuodex. There is some measure of logic to this argument, but it fails to take account of one essential point: The compromise nature of King's verdict against Nuodex patently appeared on the face of the record. No such defect showed itself in Elliott's verdict against King. We regard King's argument as too remote and speculative to justify setting aside the finding for Elliott against King.

The petitions for rehearing are denied.